(No. 25774.—

CELESTINE GROSSMAN *et al.* Defendants in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(M. BORN & COMPANY *et al.* Plaintiffs in Error.)

*Opinion filed February 14, 1941—Rehearing denied April 8, 1941.*

Wilson, J., dissenting.

Henry L. Kane, (Arthur O. Kane, of counsel,) for plaintiffs in error.

Peregrine & Bruegger, for defendants in error.

Mr. Justice Murphy delivered the opinion of the court:

The arbitrator and the Industrial Commission denied defendants in errors' claim for compensation. On *certiorari*, the superior court of Cook county set the order of the commission aside and allowed defendants in error, Celestine Grossman, widow of Peter A. Grossman, $4000, and the executors of his estate $583.15. A writ of error was allowed by this court on the petition of M. Born & Company and its insurance carrier, the Employers' Liability Assurance Corporation.

November 23, 1936, Peter A. Grossman received a fatal injury while riding in an automobile in Arkansas. At the

time of the accident he was president and general manager of M. Born & Company and the question is, was the work in which he was then engaged, and his relationship to the company, such as to make the claim made for compensation for his death by the widow and the representatives of his estate compensable under the Workmen's Compensation act. It is not denied that at the time of the injury he was making a trip in the interest of his company but plaintiffs in error contend that the work in which he was then engaged was being rendered in performance of his duties as an executive officer of the company and that such services were not rendered under a relationship of employer and employee.

The facts are not in dispute. The company, an Illinois corporation, was engaged in the manufacture of men's clothing and had its factory and place of business in Chicago. In the manufacture and sale of its products it employed about five hundred persons. In 1936, the official positions in the corporation were president, vice-president, secretary and treasurer. The persons holding the positions of vice-president, secretary and treasurer were in charge of certain departments of the business. The deceased, as president of the corporation, was also general manager. Each of the officers devoted all his time to the work of the company. The one who was vice-president was in charge of manufacturing, the secretary was sales and office manager, and the treasurer was credit manager and had charge of the books and collections. The board consisted of five members of which Edgar Born was chairman. He did not devote all his time in the interest of the company. Deceased was a director and, in the absence of the regular chairman, acted as chairman of the board.

The capital structure of the corporation consisted of 1400 shares of preferred stock and about 41,000 shares of common. Deceased owned 927 shares of common stock in his own right, and his holdings, and those of his wife and

the immediate members of his family, total 2427 shares. The one who served as vice-president owned 100 shares, the secretary 97 shares, and the treasurer none.

Deceased entered the service of the company as a bookkeeper and by successive promotions became president in 1935. In the capacity of president and general manager he was superior in authority to the vice-president, secretary and treasurer, and all the employees of the company. When he was elected president in 1935 the board of directors fixed his salary at $7500 per annum. At the end of the year 1935 the directors, by resolution, allowed him $2500 as a bonus for the services he had rendered during the year. He received the same salary in 1936 and after his death the same amount of bonus was allowed for that year.

The company received orders for manufactured articles by mail from their retail dealers located in this and other States. The article ordered was made in the factory and returned to the dealer. The company also employed representatives to travel in certain territory and visit the retail dealers and engage new ones. They worked under direction of the sales manager at the Chicago office.

The deceased and the advertising agent of the company went by train to Ponca City, Oklahoma, and from there traveled by automobile through Oklahoma and Texas. The itinerary they followed was prepared by the sales manager in the Chicago office and included the cities and villages in which the company had retail customers. They carried a sample book but it does not appear they solicited any orders. Numerous telegrams and letters sent by the deceased to the home office were introduced in evidence and they set forth in detail the results of the calls on the various customers. He reported complaints he had received in regard to slow delivery of articles, misfit of garments, inferiority of workmanship, and made comparison of the quality of their goods with those sold by competitors. In

some instances he criticized the office management for such errors and in others he reserved comments until he returned home. He adjusted a credit memorandum and, in one instance, collected $500 from a customer, on account. He canceled the agency of one retailer, took up his samples and reported the matter to the office. A comparison of the duties performed by the traveling salesman and those rendered by the deceased in the foregoing matters shows them to be similar. In addition, the deceased sought advance publicity of his expected visits in the cities on his itinerary. At one place he addressed a dyers' and cleaners' convention. While on the trip he received many telegrams from the Chicago office reporting such things as the number of orders received, the market price of materials and other matters which were under his supervision as president and general manager of the company. During the first year of his term as president, he made a trip through Illinois and, in 1936, had taken two trips previous to the one in which he was engaged at the time of the accident. The services he rendered on each of these trips were the same as on the last.

While the deceased was traveling through Texas and Oklahoma he requested the Chicago office to send additional itinerary through Arkansas. This was mailed to him, the material part of which was: "At West Memphis, Tennessee, you undoubtedly will take Route No. 61. The last important stop after you leave West Memphis is Osceola, Arkansas." Reference is made to the customer at Osceola and the business received from him. The itinerary then proceeds: "The next town is Luxora, Arkansas, where we have no one. The same thing applies to Blytheville, Arkansas." It was stipulated that the deceased received the fatal injury while riding in an automobile on Route No. 61 between the villages named in the itinerary.

Fifty-two hundred dollars of the deceased's annual salary was included in the pay-roll report and taken into con-

sideration in the premium paid by the corporation to its insurance carrier.

The trial court held that at the time of the injury deceased was not in the discharge of duties appertaining to his official position as president, but was engaged as an employee with an applicable average annual earning of $2700. The evidence shows that a traveling salesman of the company received $2700 per year, and expenses, for the services rendered as such traveling salesman.

Plaintiffs in error say in their brief that the question presented is one of fact and on that assertion they seek to invoke the rule that the findings of the Industrial Commission can not be set aside by the court on review unless such findings are clearly and manifestly against the weight of the evidence. The facts here are not in controversy and the question for consideration is one of law. *Puttkammer* v. *Industrial Com.* 371 Ill. 497; *Ervin* v. *Industrial Com.* 364 id. 56; *Mazursky* v. *Industrial Com.* id. 445.

The distinction between this case and the ordinary case of an employer and employee or master and servant lies in the fact that Peter A. Grossman was a stockholder, president and general manager of the corporation when he was injured. If the corporation had hired another to perform the work which he was doing when injured and such other person had been injured under the same circumstances, little question could arise as to such injury being compensable under the act.

The fact that the deceased was a stockholder and president of the corporation would not, in itself, preclude recovery under the Workmen's Compensation act if he was employed under circumstances showing the presence of the other essential elements of recovery. In *Stevens* v. *Industrial Com.* 346 Ill. 495, the claimant was secretary and treasurer of the corporation. When he received the injury for which claim for compensation was made, he was engaged in work outside his official duties and such claim

was held to be covered by the act. The distinction between services rendered by an officer of a corporation within his official duties and services rendered by such officer outside his official work was recognized in that case and the distinction is made in a majority of the cases in other jurisdictions.

In 71 Corpus Juris 507, the rule is stated as follows: "The majority of the cases adhere to what may be called the dual capacity doctrine; that is, that an officer, director, or stockholder of a corporation will not be denied compensation merely because he is such officer, director, or stockholder, if, as a matter of fact, at the time of the injury he is engaged in performing manual labor or the ordinary duties of a workman and receives pay therefor in the capacity of an employee, or if he is engaged in an employment palpably separate and distinct from the official duties falling upon him as an officer of the corporation. Hence, one of the fundamental tests of the right to compensation is not the title of the injured person but the nature and quality of the act he is performing at the time of the injury, or whether he was performing services for another under a contract of hire."

In an annotation of the recent cases on this subject in 81 A. L. R. 645, the editor says: "The cases appear generally to hold that the mere fact that one is a stockholder, officer, or director of a corporation does not necessarily preclude recovery for his injury or death, as an employee of the company, under the Workmen's Compensation acts, but that he may be an employee."

There are cases where the person claiming compensation was an officer of the corporation and owned such a large percentage of the stock or had carried on the business in such a manner that the existence of the legal entity of the corporation was disregarded and the compensation denied. Those cases rest upon the principle that the claimant was his own employer. *Donaldson* v. *Donaldson Co.* 176

Minn. 422, 223 N. W. 772; *Erickson* v. *Erickson Furniture Co.* 179 id. 304, 229 N. W. 101; *Aitchison* v. *Industrial Com.* 188 Wis. 218, 205 N. W. 806, and other cases referred to in the annotations 15 A. L. R. 1288, 44 id. 1217, and 81 id. 644.

The rule announced in the foregoing cases is not applicable here for the deceased owned or had under his control a small fractional part of the total stock. It was not of sufficient voting strength that he could elect himself to the board of directors or president. His election as president and general manager and his compensation were matters entirely beyond his control as a stockholder. In naming him as president and fixing his compensation the entity of the corporation was preserved as it was in other dealings he had with it. The recognition of corporate entity is well illustrated in a resolution passed by the board of directors during his presidency, in which it was resolved that the company should adopt a more aggressive attitude toward acquiring additional business but that the responsibility for such additional effort should rest on the directorate and not on the officers of the corporation.

It is clear that in order to entitle an officer of a corporation to recover compensation under the Workmen's Compensation act he must prove that his injury was received while engaged in employment as an employee of the company and not in the performance of the duties appertaining to his official capacity.

As to the work deceased performed for the corporation at its place of business in Chicago, it is not necessary to distinguish between that which he did in performance of his official duties and what he did in the capacity of an employee. Suffice it to say that the evidence discloses that he rendered some services at the factory outside his official duties as president. It is obvious that the duties of the president of this corporation could not properly be said to extend to the doing of the things in which deceased was

engaged at the time he was injured. The corporate records showed the president's duties and authorities to be to preside at all meetings of the stockholders and directors when the chairman of the board was absent, to execute bonds, mortgages and contracts and have the general powers usually vested in the president of a corporation.

Reference has been made to the fact that the corporation in making its pay-roll report included $5200 of deceased's annual salary as a part of the amount upon which it was required to pay premium for compensation insurance. Said salary item was given a classification of No. 8742, which, according to the provisions of the policy, was "outside salesman." The policy also contained a clause excepting from its provisions remuneration of president, vice-president, secretary or treasurer of the company "but including the remuneration of any one or more of such designated officials who are actually performing such duties as are ordinarily undertaken by a superintendent, foreman or workman." Such facts are admissible as an indication that the employer intended that such person should be considered as an employee and intended that a part of his services should be covered by insurance.

The conclusions reached are supported by *Stevens* v. *Industrial Com. supra,* the cases from other jurisdictions referred to in that case, and the following cases: *Kuehnl* v. *Industrial Com.* 136 Ohio St. 313, 25 N. E. (2d) 682; *March* v. *March,* 280 N. W. (Minn.) 644; *Zurich Accident and Liability Ins. Co.* v. *Industrial Com.* 193 Wis. 32, 213 N. W. 630.

For the reasons assigned, the judgment of the superior court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WILSON, dissenting.