M. E. BADON REFRIGERATION Co., INC., et al. *v.*
BADON, et al.

No. 40447          May 6, 1957          95 So. 2d 114

*Rae Bryant*, Gulfport, for appellant.

*Roach & Jones*, McComb, for appellees.

HALL, J.

This is a claim for benefits under the Workmen's Compensation Act filed by Mrs. Lullean Badon, a widow, and Maxine Badon, a minor and adopted daughter, and Betty Cooper, a minor and foster daughter, on account of the death of M. E. Badon who was killed in an automobile accident on Highway 98 in Lamar County, Mis-

sissippi, at about 7 P. M. on the night of September 29, 1955. The attorney-referee denied the claim and his action was affirmed by the full Commission, but was reversed and a judgment rendered in favor of the claimants by the Circuit Court of Lamar County, from which the employer and carrier appeal.

The deceased, in his individual capacity, owned and operated a refrigeration sales and service business in the City of McComb, Mississippi, and he resided in that city. In the early part of 1955 M. E. Badon and T. E. Aldridge organized a similar type of business to operate in and out of the City of Jackson, which business was incorporated with a $10,000 capital. $4,500 of the capital stock was issued to Mr. Aldridge and $4,500 was issued to Mr. Badon and $500 each was issued to Mrs. Aldridge and Mrs. Badon. Mr. Aldridge was elected the president and general manager of the corporation. Mrs. Aldridge and Mrs. Badon were both elected vice-presidents, and Mr. Badon was elected secretary of the corporation. The territories in which the two businesses operated were roughly along a line drawn from about Hazlehurst, Mississippi, to the Alabama line, the area south of this line being in the territory served by the individual operation at McComb and operation of the corporation being north of said line.

Mr. Aldridge and Mr. Badon each drew a salary of $120 per week. Mr. Aldridge, as general manager of the business devoted such time as was necessary to performing the executive functions of his office and the remainder of his time he worked in the capacity of a salesman in and around Jackson. Mr. Badon had no duties whatsoever as an executive of the corporation and drew no salary as such, but his entire duty with the corporation was as a salesman and he devoted such time as was necessary to the Jackson territory for the corporation.

On Monday, Tuesday and Wednesday, September 26, 27 and 28, 1955, Mr. Badon was working for the corporation in and around Jackson and he spent Monday and Tuesday nights in Jackson. On Wednesday afternoon or night, he returned to his home in McComb, having already received instructions to go from McComb to Hattiesburg, Mississippi, and pick up Wayne McClure, a salesman of the corporation, and to spend the remainder of Thursday in the territory which was served out of Jackson. Mr. Badon made the trip which had been agreed upon and Mr. McClure went with him from Hattiesburg. Their first stop was at Montrose, Mississippi, where Mr. Badon was undertaking to collect an account owing to the corporation, and at that place he picked up a slicing machine which had previously been sold to the customer and placed it in his car. They then went to Newton and Morton and Forest and Union and Philadelphia, Mississippi, all of which was in the territory of the corporation and at these places they called on various customers. They returned in the late afternoon to Hattiesburg where Mr. McClure got out of the automobile at his home at about 6:30 P. M., after which Mr. Badon left Hattiesburg on Highway 98, headed toward McComb, where he was to spend the night with his family and on the following day was to return to Jackson for further duties with the corporation. A few miles out of Hattiesburg the fatal accident occurred.

Appellants first contend that the death of Mr. Badon did not arise out of and in the course of his employment. The attorney-referee and the Workmen's Compensation Commission and the circuit court all found that it did and there is substantial evidence to support that finding, and we are all agreed on that point. In Larson on Workmen's Compensation, Section 16.00, it is said: "The rule excluding off-premises injuries during the journey to and from work does not apply if the making of that journey, whether or not separately com-

pensated for, is in itself a substantial part of the service for which the worker is employed. * * *

"This principle helps to explain a considerable group of 'exceptions' to the premises rule. The most obvious application is, of course, to the traveling salesman. It is well established that his travels are within the course of his employment from the time he leaves home on a business trip until he returns, for the self-evident reason that the traveling itself is a large part of the job."

In 58 Am. Jur., Workmen's Compensation, Section 225, at pages 730 and 731, it is said: "While Traveling.—With respect to the compensability of injuries to employees, the performance of whose duties necessitates their traveling from place to place away from the premises of the employer, sustained while so traveling, as arising out of and in the course of the employment, the right to compensation depends, as in other cases generally, upon whether the injury results from a risk which is inherent in the nature of the employment, or which is reasonably incidental thereto, or to which the employee is specially exposed, and upon whether the employee, at the time of the occurrence of the accident, was engaged in the exercise of some function or duty reasonably necessary or incidental to the performance of the contract of employment, or, if not actively engaged, whether he was at a place where he was authorized or required by such contract to be. The course of the employment of a traveling salesman, for the purposes of workmen's compensation, covers both the time and place of the traveling as well as of the selling of goods."

We think the same principle was decided by this Court in the case of Whittemore Bros. Corp., et al v. De Grandpre, 202 Miss. 190, 30 So. 2d 896, which involved in a suit in this state the application of the Massachusetts compensation law. See also Vestal & Vernon Agency v. Pittman, 219 Miss. 570, 69 So. 2d 227, and Retail Credit

Co., et al v. Coleman, 86 So. 2d 666, not yet reported in the State Reports.

The appellants next contend that the deceased was an officer of the corporation and was not endorsed on the policy of insurance and therefore was not covered by the Mississippi Workmen's Compensation law. The original law, Chapter 354, Laws of 1948, in Section 34, provided: "Acceptance of premium by carrier and estoppel.—Acceptance of a premium on a policy securing to an employee compensation, either alone or in connection with other insurance, shall estop the carrier so accepting from pleading that the employment of such employee is not covered under the act or that the employment is not carried on for pecuniary gain."

This statute was amended by Section 14 of Chapter 412, Laws of 1950, by adding to the foregoing the following additional provision, as found in Section 6998-40 of the Recompiled Code of 1942: "When any member of a partnership, firm, or association, or officer of a corporation, who does or does not perform manual labor, and where there is coverage of fellow employees, elects to take coverage under the provisions of the act, the intent of the insured as well as acceptance by the carrier shall be shown by endorsement to the policy. Any such affirmative action by the parties shall entitle said members or officers to the benefits enjoyed by an employee under the act."

It is undisputed, and the carrier admits, that it charged and collected a premium on the salary of the deceased. By an endorsement on the policy there were included in the coverage of the policy three types of employees, (1), electrical wiring—within buildings—including installation or repair of fixtures or appliances; drivers, chauffeurs, and their helpers; (2) salesmen, collectors or messengers—outside, under which classification there was shown an estimated payroll of $7,000 for a period of six months; and (3) clerical office employees.

At the time of the issuance of this policy, Mr. Aldridge and Mr. Badon were the only salesmen employed by the company. They later hired other salesmen, but the final amount of premium to be paid depended on the total amount of wages paid out. It is true that the endorsement on the policy did not specifically contain the name of Mr. Badon as being a salesman, neither did it contain the name of Mr. Aldridge, but it did cover salesmen and there were only the two above named at the time of its issuance. After the carrier denied liability for the death of Mr. Badon, on his insistence the company attached to the policy, without additional premium, an endorsement specifically naming Mr. Aldridge as being covered under the policy.

We do not think that there is any question but that under the Workmen's Compensation law, as originally adopted in 1948, Mr. Badon was an employee as defined by Section 6998-02, subparagraph 4. He was not a self-employed person but was employed by a corporation which was an entirely separate entity and the mere fact that he was an officer of the corporation does not remove him from the coverage of the Act prior to the 1950 amendment. This rule seems to be well settled. Section 54.00 of Larson's Workmen's Compensation Law, says as follows: "Corporate officers who perform only executive functions are deemed excluded from almost all acts. But a person who can establish independently, on the basis of nature of the work done, method of payment, and subservience to the control of an employer, that he meets the tests of employment does not forfeit that status by occupying at the same time the status of corporate officer, director or stockholder. Members of a partnership, however, apart from a few special statutes, cannot be employees, even if they do extra work for which they receive payment beyond their share of the profits, since there is no separate business entity that can be called the

employer, and since all partners normally have equal rights in management.''

Section 54.21 of Larson provides as follows: ''As long as an officer's or director's duties are confined to the executive functions associated with the office, such as policy making, hiring and firing, negotiating of important contracts, and the like, the compensation act does not apply. It could be argued, of course, that since technically the only true employer is the corporate entity the officers should be ranged on the employee rather than the employer side. This reasoning overlooks the practical fact that some human beings must exert the powers that belong to the employer-corporation, and those persons, the officers and directors, must therefore for compensation purposes be identified with the employer while exercising those powers.

''It is quite common, however, especially in small corporations whose demands upon their officers take only a small fraction of their time, to find that the officers also discharge duties which, if performed by anyone else, would unquestionably confer employee status. In such cases, when the normal incidents of employment attend the performance of the non-executive work, it is uniformly held that the compensation act applies. The clearest instances are those in which the officer engages in manual or non-supervisory tasks, as in the case of a corporation president working in a coal yard at two dollars a day under the orders of the general manager, * * * a president and principal stockholder doing selling, manual work, and the like, a secretary-treasurer-director-stockholder doing collection work, or an officer doing sales work on the road or behind a counter. In addition, the vast majority of the cases have awarded compensation even when the employment duties were of a supervisory character, such as those of a general manager, superintendent of a department, foreman, or

superintendent of construction, since these are all jobs that, in ordinary circumstances, would make the holder an employee.''

58 Am. Jur., Workmen's Compensation, Section 150, provides: ''While the managing or higher executive officers of corporations have been held in some instances not to fall within the category of 'workmen' or 'employees', within the meaning of those terms as used in compensation acts, the cases appear generally to hold, in the absence of any provision to the contrary, that the mere fact that one is a stockholder, officer, or director of a corporation does not necessarily preclude recovery for his injury or death, as an employee of the company, under workmen's compensation acts, but that he may be an employee, depending upon such factors as the nature of the work for which he receives pay, the proportion of the stock which he owns, and whether, in case he performs the work of an ordinary employee, such work is not merely occasional or incidental, but is his regular work. It has been held, in this connection, that one who is both an employee and the secretary and treasurer of a corporation acts in the capacity of employee, and not in that of an officer of the corporation, in going out to collect a bill for it, so as to be entitled to compensation for an injury sustained while so engaged.''

There are numerous cases which follow the rules laid down in American Jurisprudence and Larson, and we mention only a few of them. See Skouitchi v. Chic Cloak & Suit Co., 230 N. Y. 1296, 130 N. E. 299, 15 A. L. R. 1285; Stevens v. Industrial Commission, 346 Ill. 495, 179 N. E. 102; White v. Arnold Wood Heel Co., 90 N. H. 315, 8 A. 2d 737; and Eagleson v. Harry G. Preston Co., (Pa.), 109 A. 154.

We have repeatedly held that the Workmen's Compensation Law should be given a liberal interpretation to accomplish the purpose of the legislature. In the ab-

sence of the 1950 amendment, Mr. Badon was clearly covered by the act since he was an officer of a corporation, but as an individual operator or as a member of a partnership he would not have been covered by the original act because in either instance he would have been his own boss. We therefore hold that it was the manifest intention of the legislature to broaden the coverage of the act and not to narrow it, and that it would be unfair, unjust, and inequitable to permit the carrier to collect premiums on Mr. Badon's salary and then to seek to avoid liability for compensation for his death simply because his name was not specifically written in the policy or endorsed thereon. In the case of Kuehnl v. Industrial Commission of Ohio, 136 Ohio St. 313, 25 N. E. 2d 682, the president, manager and principal stockholder of a small corporation was injured, not while engaged the performance of executive functions but while engaged as an actual employee of the corporation. The sole defense was that since the claimant was president and general manager of the corporation he was not such an employee at the time of his injury as to entitle him to compensation. The state through the Industrial Commission had collected the premium on the corporation's payroll, including the wages of the claimant. The claim was allowed by the Common Pleas Court; its judgment was affirmed by the Court of Appeals and also by the Supreme Court of Ohio, which court, in passing upon the question, said: "The Workmen's Compensation Act, Gen. Code, Sections 1465-37 et seq., does not discriminate against small corporations and their employees, the latter being entitled to full protection under this law. The law was enacted, pursuant to the Constitution as stated in Section 35, Article II, 'For the purpose of providing compensation to workmen and their dependents, for death, injuries, or occupational disease, occasioned in the course of such workmens' employment * * *.' In fact, the spirit of the Workmen's Compensation Act is to

give encouragement to the employment of the corporate fiction as a nominal employer, so that all bona fide employees of such an entity, when they exceed two in number, are granted coverage. The social implications of the law are that the economic loss of the injured employee, or his dependents in case of his death, must be borne by industry, and that this policy should not be thwarted by the device of making a bona fide employee an executive officer of a corporation, or by making such an employee a member of a partnership in order to reduce the number of persons employed and thus escape the the application of the law.

"If the corporation had hired another person to perform the work being done by Kuehnl at the time of his injury, and such person had been injured as Kuehnl was injured, without question he would have been entitled to participate in the State Insurance Fund. The economic loss and handicap to Kuehnl because of his injury was just as great and severe as it would have been if the injury had happened to any other workman. The state, through the Industrial Commission, had required the corporation to comply with the law, had collected the premium covering its pay roll including the wages of Kuehnl, which incidentally took away any right which he, the claimant, may have had to recover his loss from the corporation. Incidentally, by the corporation's compliance with the law, the interest of the other shareholder was protected, and entitled to be protected against any claim which Kuehnl might have against the corporation on account of such injury."

The court said: "This court has held on several occasions that the Workmen's Compensation Act of this state is for the benefit of the injured party, and should be liberally interpreted in favor of the applicant. Industrial Commission v. Pora, 100 Ohio St. 218, 125 N. E. 662; Industrial Commission v. Weigandt, 102 Ohio St. 1, 7, 130 N. E. 38; Industrial Commission v. Lewis,

125 Ohio St. 296, 181 N. E. 136. This is especially so in the case at bar since the claimant's wages were included in the pay roll report and were taken into consideration in the premium paid by the corporation. If such course is consistently followed, the State Insurance Fund will not suffer by reason of the allowance of such a claim.

"The judgment of the Court of Appeals is affirmed."

The decision in the foregoing case was followed by the Court of Appeals of Ohio in Hillenbrand v. Industrial Commission, 72 Ohio App. 427, 52 N. E. 2d 547.

In the case of Miller's Mutual Casualty Co. v. Hoover, (Tex.) 235 S. W. 863, the Commission of Appeals of Texas awarded compensation for the death of Hoover, who was an officer of the milling company which was a corporation but who was engaged at the time of his death not as an actual officer of the company but who was engaged as an employee of the mill. The Texas Compensation Act at that time defined "employee" in terms similar to the Mississippi Act. It also contained a provision as follows: "Section 1a of part 4 (article 5246-83), which is the section calling for construction, reads as follows: 'The president, vice president or vice presidents, secretary or other officers thereof provided in its charter or by-laws and the directors of any corporation which is a subscriber to this act shall not be deemed or held to be an employe within the meaning of that term as defined in the preceding section hereof.' "

The Court said: "If the language employed in section 1a were so plain as not to admit of doubt or uncertainty as to its meaning, it would be the duty of the courts to give effect to that meaning regardless of whether such construction harmonize with the general purposes or policy of the act. But, where the language is of doubtful or uncertain meaning, resort may be had to canons of construction, and inquiry made into the purposes of the legislation. We are not prepared to say that the language of section 1a is so plain and free from doubt as

not to call for construction and invite inquiry into the legislative intent. It has been held in a number of states that there is nothing in the relation of an executive officer or director of a corporation which is irreconcilably inconsistent with his being also an ordinary employe of the corporation within the provisions of Workmen's Compensation Acts. The cases upon this subject are collated in 1 Honnold on Workmen's Compensation, 173, and 28 R. C. L. 764, 765. Stockholders of a corporation are, in a sense, the owners of the corporation. Its directors have the sole management of its affairs, and their acts as such are its acts. The same may be said of its officers while acting within the powers delegated to them by the board of directors. But, as individuals, the stockholders, directors, and officers of a corporation are distinct legal entities, and are as entirely free to deal with the corporation by contract or otherwise, within certain well-defined limitations not essential to enumerate, as any other individual.

"It is readily conceivable that one might occupy the dual relation of any ordinary employe coming within the benefits of the act, and of an employe coming within one of the excepted employments enumerated in the act. As, for example, a person operating a small manufacturing plant might have one in his employ in the plant who also performed services for him as a domestic servant. Under such circumstances, we think it would be held that the fact that he performed duties which were not within the protection of the act would not preclude him from receiving the benefits of the act if injured while performing the duties of an employe within the protection of the act. Why should not the same course of reasoning apply to one who is both officer and employe of a corporation? The only necessary construction to be placed upon section 1a is that officers and directors as such are precluded from the benefits of the act. Beyond that the

express language is silent. To give it either of the constructions contended for would require supplementing the language used, if all uncertainty is to be removed. Plaintiff in error would supply after 'directors of any corporation' the words 'whether acting in their official capacity, or otherwise'; while defendants in error would supply at the same place the words 'as such'. It seems quite plain to us that in order to arrive at the legislative intent we must look beyond the mere language of section 1a. ''

The Court further said: ''Aside from this however, we feel quite confident in the conclusion first expressed that, by the language employed, it was the intention of the legislature to preclude only the class of persons enumerated in section 1a from the benefits of the act as a class, and not the individuals of that class who might fall under other relations they might sustain to the corporation, within the clear purview of the act. We are not called upon here to construe the meaning of the term 'officers' as employed in section 1a, nor to consider the effect of a subterfuge resorted to for the purpose of bringing an officer or director within the provisions of the act. It is clear, and in fact, conceded, that Hoover was head miller of the corporation; that his employment was bona fide; that he lost his life in the discharge of his duties as head miller; that in such employment he was not acting as officer or director of the corporation; and that he clearly came within the provisions of the act, unless precluded by section 1a.

''We conclude that the judgments of the district court and Court of Civil Appeals should be affirmed.'',

The judgment and decision of the Commission of Appeals was adopted by the Supreme Court of Texas and entered as the judgment of the Supreme Court.

In the case of Cook v. Miller's Indemnity Underwriters, (Texas), 240 S. W. 535, under a quite similar

state of facts, the Commission of Appeals reversed the judgment of the Court of Civil Appeals and entered judgment in favor of the claimant, and its decision was adopted by the Supreme Court of Texas.

Another case which we consider in point is Grossman v. Industrial Commission, 376 Ill. 198, 33 N. E. 2d 444. In that case the president and general manager of the corporation was on a trip in the State of Arkansas when he received his fatal injury as the result of an automobile wreck. At the time of his death he was traveling on business for the company and was not engaged in any executive duties, but was working solely as an outside salesman. $5,200 of the deceased's annual salary was included in the payroll report and taken into consideration in the premium paid by the corporation to its insurance carrier. The Supreme Court of Illinois said: "The distinction between this case and the ordinary case of an employer and employee or master and servant lies in the fact that Peter A. Grossman was a stockholder, president and general manager of the corporation when he was injured. If the corporation had hired another to perform the work which he was doing when injured and such other person had been injured under the same circumstances, little question could arise as to such injury being compensable under the act.

"The fact that the deceased was a stockholder and president of the corporation would not, in itself, preclude recovery under the Workmen's Compensation Act if he was employed under circumstances showing the presence of the other essential elements of recovery. In Stevens v. Industrial Comm., 346 Ill. 495, 179 N. E. 102, 81 A. L. R. 638, the claimant was secretary and treasurer of the corporation. When he received the injury for which claim for compensation was made, he was engaged in work outside his official duties and such claim was held to be covered by the act. The distinction between serv-

ices rendered by an officer of a corporation within his official duties and services rendered by such officer outside his official work was recognized in that case and the distinction is made in a majority of the cases in other jurisdictions. * * *

"Reference has been made to the fact that the corporation in making its pay roll report included $5,200 of deceased's annual salary as a part of the amount upon which it was required to pay premium for compensation insurance. Said salary item was given a classification of No. 8742, which, according to the provisions of the policy, was 'outside salesman'. The policy also contained a clause excepting from its provisions remuneration of president, vice-president, secretary or treasurer of the company 'but including the remuneration of any one or more of such designated officials who are actually performing such duties as are ordinarily undertaken by a superintendent, foreman or workman'. Such facts are admissible as an indication that the employer intended that such person should be considered as an employee and intended that a part of his services should be covered by insurance."

In the case of Southern Surety Co. et al. v. Childers et al., 87 Okla. 261, 209 P. 927, the claimant was injured while engaged in testing a racing automobile for a corporation in which he owned 80 percent of the stock and was president. In affirming an award of compensation the Supreme Court of Oklahoma said: "It appears to us that the better reason dictates that compensation should not be denied one because he happens to be a stockholder and president or other executive or managing officer of the corporation that employs him, and that that fact alone is not sufficient to eliminate him from those regarded as employees within the meaning of such act. Obviously, where the claimant was the chief executive officer of a large corporation and his duties

did not require that he perform manual or mechanical labor, he could not be regarded as the employee within the meaning of the act or the terms of the policy, and if he sustained injuries while performing manual or mechanical labor, which was no part of his duties, but in which he acted as a mere volunteer, he would not be entitled to compensation. On the other hand, although the claimant was the owner of the majority of the stock and was the chief executive officer of a corporation, yet if he performed manual or mechanical labor as a part of his duties, such an official in his capacity as a workman might measure up in all respects to the conception of an employee within the meaning of the act. The case at bar affords an apt illustration of a case where the official of a corporation served in dual capacity; that is, as an officer and as a workman. The claimant had owned the automobile agency and garage; he organized a corporation and transferred his assets to the corporation in exchange for 80 per cent. of its capital stock and was the president of the corporation, but he was also a mechanic, and a portion of his time was occupied in manual and mechanical labor in the shop or garage, and in testing and demonstrating cars, and while thus engaged the injury complained of occurred. * * *

"The claimant and the corporation were separate entities. The evidence shows that the claimant's wages for mechanical and manual labor amounted to from $8 to $10 per day. Furthermore, the premium paid was based upon the pay roll which included the remuneration of the claimant not to exceed $1,500 per annum. The Southern Surety Company treated the claimant as an employee for the purpose of collecting the premium and cannot now, when called upon to pay the loss, be heard to deny that he was an employee."

In the case of Lichty v. Lichty Construction Co., (Wyo.), 243 P. 2d 151, an action was brought by the

widow of Glenn N. Lichty for the recovery of compensation for his death. The company was a corporation and the deceased owned 447 of the 586 shares in the company. His wife owned 57 shares and two of his brothers owned 41 shares each. The deceased was president of the company and was also superintendent of construction. The company was engaged in heavy construction work, such as highway work, and owned and used miscellaneous heavy dirt moving equipment such as tractors, bulldozers, scrapers, rollers, draglines and trucks. The deceased performed all of the duties and functions ordinarily and usually performed by the president of a corporation, such as the supervision and execution of various and sundry reports to governmental agencies, the negotiations and completion of contracts on behalf of the corporation, the signing of checks and other instruments necessary to the transaction of the corporate business. He was also superintendent of construction and had the right to hire and fire employees and fix their pay. He also had the right to submit bids on proposed construction and to bind and obligate the corporation to carry out contracts entered into for such construction, as well as to purchase machinery, materials, and supplies necessary to carry out the contracts negotiated on behalf of the corporation, and to supervise, control and direct all of the employees. At times he personally operated the heavy machinery and equipment and trucks of the company in order to keep the job moving. No other officer or officers exercised any control over him as to the time he worked on the job and he was free to come and go according to his own desires. He received no compensation from the company as an officer but was carried on the payroll the same as any other employee and was paid for actual time he was on the job. The wages he received were reported to the Workmen's Compensation Department upon the regular payroll report of the company and the proper fee was

paid thereon. At the time of his death the company was engaged in excavating and lining a canal for the U. S. Reclamation Service near Riverton, Wyoming. He had come to Riverton driving a company pickup truck and had placed therein a new fuel pump for another company truck and was returning with it to the job. The truck struck a slick spot on the highway and skidded and overturned, breaking his neck and crushing the left side of his chest as a result of which he died almost instantly.

Subdivision (i) of Section 72-106 of the Workmen's Compensation Act of Wyoming, defined who is a workman and specifically excepted from the definition ''one holding an official position''. The Workmen's Compensation Department of Wyoming construed the quoted words to mean that if an injured or deceased person held an office in a corporation, he was excluded from the coverage of the act. The deceased met his death on March 20, 1950, and at the 1951 Session of the Legislature of Wyoming the said definition of ''workmen'' was amended so as to specifically include officers of a corporation, the business of which is classed as extra hazardous in nature, provided such person or persons are actually subject to the hazards of such business in the regular performance of their duties. It will be noted that the amendment was after the death of Mr. Lichty and after the ruling of the Workmen's Compensation Department.

In passing upon this case the Supreme Court of Wyoming quoted from a great many of the authorities which we have hereinabove cited, and said: ''It would seem that the legislature was endeavoring to carry out and approve the liberal construction theory which most Appellate Courts (including this Court) adopt touching Workmen's Compensation Acts and considered the ruling of the Workmen's Compensation Department of the State now in question before us, altogether too severe and illiberal especially as regards small business con-

cerns whose officers are perforce obliged to take a hand in the manual performance of the works they undertake and the later law was enacted with that intention in mind. At any rate, the law in question was radically altered as very clearly appears from a comparison of the two subdivisions mentioned above. * * *

"We feel that it is our duty to decide the case at bar in accord with our previous decisions liberally construing the Workmen's Compensation Law of this State and in accord with its intent as indicated by the action of the 1951 Legislature described above. It may be in the instant action noted that the Workmen's Compensation Department of Wyoming accepted the payrolls of the Lichty Construction Company and also the fees paid said department by that company on account thereof and acquiesced in the reception thereof without objecting that Lichty was an officer of the company and 'held an official position' therein but, nevertheless, he was carried on the company's payroll over a period of a number of years and his wages, of course, listed on the payroll as an employee. He never received a cent as an executive of the company; whether the company paid any dividends does not appear in the case. It may well be that payroll wages was all that the operation of the company could produce.

"It is suggested that the Workmen's Compensation Department has heretofore always rejected claims 'where the claimant was an officer of the corporation employer'. This without more we think, was an erroneous view of the language of the Act and not in accord with the spirit of its being liberally construed or in accord with the manifest policy of the Act as declared by this Court to impose upon the industry the burden of claims on account of injuries suffered by workmen under it."

██ █ In view of the foregoing authorities we are of the opinion that since the company insured salesmen

and collectors under a separate clause in the policy, and since at the time of its issuance the company had only two salesmen, it was manifestly the intention to cover these two salesmen; and in view of the numerous authorities which we have hereinabove cited that when the carrier collected and received the premium on Mr. Badon's wages it also assumed responsibility for any accident which might befall him. The original Act, Section 34, Chapter 354, Laws of 1948, which was left intact in the 1950 amendment, strengthens this view, and thereunder the carrier is estopped from claiming that the deceased is not covered by the Act. We are of the opinion that the 1950 addition thereto, as found in the second paragraph of Section 6998-40, supra, clearly manifests an intention on the part of the legislature to make possible the coverage of officers of a corporation who exercise executive functions only, and who perform no duties as an ordinary employee. Since it has been clearly demonstrated that the deceased was covered by the Mississippi Act as it existed prior to the 1950 amendment because he was killed while doing non-supervisory work, the 1950 statute does not come into operation in this case. We are herein dealing with a question of law and not of fact and it is our opinion that the holding of the attorney-referee and of the full Commission was clearly erroneous and that the holding of the learned circuit judge was correct and that his judgment should be affirmed. The case will be remanded so that the Commission may supervise payment of the benefits due.

Affirmed and remanded.

All Justices concur except *Kyle, J.,* who took no part.