BARNES, J.,
for the Court:
¶ 1. Imperial Palace of Mississippi LLC (Imperial Palace) appeals from the order of the Mississippi Workers’ Compensation Commission (Commission), which affirmed an administrative judge’s order awarding compensation to Bonnie F. Ryan for surgery and other medical-treatment expenses. The only issue on appeal is whether there is substantial evidence to support the Commission’s decision. Finding that substantial evidence exists, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Ryan works for Imperial Palace as a PBX operator and trainer. On August 10, 2010, Ryan was sitting at her desk when her chair broke. In an attempt to prevent herself from falling, Ryan reached out to an adjacent desk chair. While Ryan did not strike the floor, this maneuver resulted in her body twisting to the right. Ryan claimed that this twisting caused severe pain in her neck, back, shoulders, arms, hands, and legs. Ryan reported this incident to her supervisor, Andrea Creel, on August 12, 2010.
¶ 3. On August 12, 2010, Ryan met with her family physician, Dr. Tricia Aultman, who diagnosed her with whiplash. Dr. Aultman prescribed pain medication and steroid injections to treat Ryan’s pain. Ryan then visited Dr. Tana Cooper on August 13, 2010, for a second opinion. Dr. Cooper did not diagnose Ryan with any significant injury but did recommend a limitation on carrying or lifting heavy objects. Dr. Cooper also prescribed pain medication and recommended physical therapy.
¶ 4. When Ryan’s symptoms of pain did not subside, she was sent by Paula Melmly, a nurse practitioner for Imperial Palace, for an x-ray. On August 17, 2010, Ryan underwent an x-ray exam for her neck and upper spine at Ocean Springs Hospital. Ryan returned to Dr. Aultman, who sent her for an MRI exam. On August 25, 2010, Ryan underwent the MRI exam of her neck and upper spine at Ocean Springs Hospital. After reviewing the exam results, Dr. Aultman referred Ryan to Dr. Eric Graham, a neurosurgeon, for consultation and medical treatment.
¶ 5. Ryan first met with Dr. Graham on September 13, 2010. Dr. Graham noted an abnormal range of motion in her neck with pain at the extremes of motion. Dr. Graham further noted Ryan’s pain symptoms were distributed to her neck, upper shoulders, and arms, with tenderness to the touch. Dr. Graham diagnosed Ryan with “cervical radiculitis, a herniated cervical disc with myelopathy, and cervical spondylosis with myelopathy.” Dr. Graham noted that the cervical spondylosis potentially predated the accident of August 10, 2010, but he was not certain. Dr. Graham prescribed pain medication and referred her for an epidural steroid injection. Dr. Graham scheduled a follow-up exam with Ryan to discuss further treatment options.
¶ 6. Ryan next saw Dr. Graham on October 25, 2010. Dr. Graham again noted an abnormal range of motion in her neck with pain at the extremes of motion. Dr. Graham further noted Ryan’s pain symptoms were distributed to her neck, upper shoulders, and arms, with tenderness to the touch. Attempts to treat Ryan’s symptoms with pain medication and steroid injections continued to be ineffective. Dr. Graham and Ryan discussed the surgical treatment options available. Dr. Graham recommended an anterior cervical diskec- *632 tomy and fusion of four levels of Ryan’s cervical vertebrae. Ryan reviewed the information regarding her symptoms and agreed to have Dr. Graham perform the procedure. Dr. Graham obtained informed consent from Ryan to perform the surgery.
¶ 7. Ryan then saw Dr. Jhinho Kim for a clinical consultation on November 30, 2010. Dr. Kim diagnosed Ryan with “severe cervical spondylosis, cervical spinal canal stenosis, a spontaneous fusion of cervical vertebrae C6-C7, and myofascial and facet joint strain of the cervical spine.” Dr. Kim noted that the cervical spondylosis was a preexisting condition, predating the August 10, 2010 accident. Dr. Kim reviewed the surgical recommendation by Dr. Graham. Dr. Kim recommended treating Ryan with “a neck brace for two to three months before considering surgical options.”
¶ 8. Ryan filed a petition to controvert with the Commission on December 1, 2010. The Commission granted a hearing before an administrative judge (AJ) on March 24, 2011. On April 20, 2011, the AJ issued an order stating that the accident of August 10, 2010, aggravated or accelerated Ryan’s preexisting condition; that the surgical procedure recommended by Dr. Graham was reasonable and necessary; and that the Imperial Palace was financially responsible for the surgery and other medical treatment recommended by Dr. Graham.
¶ 9. On April 25, 2011, Imperial Palace filed a petition for a full Commission review of the AJ’s order. The Commission reviewed and affirmed the order on September 20, 2011. Imperial Palace filed a notice of appeal on September 30, 2011.
STANDARD OF REVIEW
¶ 10. “The standard of review by which an appellate court resolves a workers’ compensation case is that of substantial evidence; however, where the issue is one of law and not of fact, the standard of review is de novo.” Hugh Dancy Co. v. Mooneyham, 68 So.3d 76, 79 (¶ 6) (Miss. Ct.App.2011) (quoting Shelby v. Peavey Elees. Corp., 724 So.2d 504, 506 (¶ 8) (Miss. Ct.App.1998)). “Substantial evidence, though not easily defined, has been said to be ‘such relevant evidence as reasonable minds might accept as adequate to support a conclusion.’ ” Kukor v. Ne. Tree Serv., Inc., 77 So.3d 1134, 1136 (IT 7) (Miss.Ct. App.2011) (quoting Delta CMI v. Speck, 586 So.2d 768, 773 (Miss.1991)).
¶ 11. “We will only overturn a decision of the Commission ‘for an error of law or an unsupportable finding of fact.’ ” Shipp v. Thomas & Betts, 13 So.3d 332, 334 (¶ 6) (Miss.Ct.App.2009) (quoting Ga. Pac. Corp. v. Taplin, 586 So.2d 823, 826 (Miss.1991)). “The Commission ‘serves as the ultimate fact[-]finder in addressing conflicts in medical testimony and opinion.’ ” Smith v. Tronox LLC, 76 So.3d 774, 780 (¶ 23) (Miss.Ct.App.2011) (quoting Raytheon Aerospace Support Servs. v. Miller, 861 So.2d 330, 336 (¶13) (Miss. 2003)). “Where medical expert testimony is concerned, the supreme court has held that whenever the expert evidence is conflicting, the Court will affirm the Commission’s decision whether the award is for or against the claimant.” Id.
DISCUSSION
¶ 12. The only issue on appeal is whether there is substantial evidence to support the Commission’s award of compensation to Ryan.
¶ 13. For an award of workers’ compensation benefits, a claimant must prove “(1) an accidental injury; (2) arising out of and in the course of employment; and (3) a causal connection between the injury and the claimed disability.” Bever *633 ly Healthcare v. Hare, 51 So.3d 223, 230 (¶ 25) (Miss.Ct.App.2010) (quoting Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 13 (Miss.1994)). There is no dispute that, on August 10, 2010, Ryan suffered an accidental injury, which arose out of and in the course of employment, and caused a com-pensable disability.
¶ 14. Rather, Imperial Palace argues here that the proposed neck surgery by Dr. Graham is to treat a preexisting degenerative condition. Imperial Palace contends that since Ryan returned to work in her normal position and without any apparent limitations, the contribution stemming from her injury was resolved. Imperial Palace further argues that the current condition of Ryan’s neck is the result of her preexisting condition for which it is not financially responsible.
¶ 15. The Mississippi Supreme Court noted in Rathbome, Hair & Ridge-way Box Co. v. Green, 237 Miss. 588, 594, 115 So.2d 674, 676 (1959):
The rule in this State is that when a preexisting disease or infirmity of an employee is aggravated, lighted up, or accelerated by a work-connected injury, or if the injury combines with the disease or infirmity to produce disability, the resulting disability is compensable. A corollary to the rule just stated is that when the effects of the injury have subsided, and the injury no longer combines with the disease or infirmity to produce disability, any subsequent disability attributable solely to the disease or infirmity is not compensable.
The central issue for the Commission to determine was whether a causal connection existed between the August 10, 2010 accident and the current condition of Ryan’s neck. Essentially the Commission had to determine whether the contribution of the August 10, 2010 injury to Ryan’s neck condition was resolved. The Commission determined that it had not. We find this decision was based on substantial evidence in the record.
¶ 16. The AJ determined that a causal connection existed based upon the deposition of Dr. Graham and the medical records of Dr. Kim. In his February 10, 2011 deposition, Dr. Graham was asked about the relationship between the 'accident of August 10, 2010, and Ryan’s current medical status:
Q. Based upon the history you obtained from her and specifically with reference to the L’hermitte sign that followed the injurious insult, and based on your full examination, diagnostic review of her studies, do you have an opinion based on a reasonable medical probability as to whether or not the industrial accident of August 10, 2010 at the IP Casino contributed to, accelerated, or aggravated her underlying condition, which is the need for your recommended surgery?
A. I would say it aggravated it. I feel very comfortable saying that.
Dr. Kim examined Ryan on November 30, 2010, and documented this consultation. The medical records from that examination state that the “contribution of the injury to the changes in the intraspinal compartment cannot be ruled out.”
¶ 17. Both Dr. Graham and Dr. Kim indicated that Ryan continues to suffer pain symptoms and had not yet reached maximum medical improvement. Dr. Graham’s medical records, dated August 13, 2010, and October 25, 2010, state that Ryan was experiencing “pain to the extremes of flexion, extension, and side bending” in her neck during both examinations. Dr. Kim’s medical records of November 30, 2010, indicate similar symp *634 toms-“her main complaints are that of posterior neck pain from craniocervical junction down along the trapezius ridge toward the shoulder.... ” Dr. Kim also stated in his records that Ryan had not reached “maximum medical improvement ... since cervical immobilization has never been tried.”
¶ 18. The Commission then considered evidence as to whether a surgical procedure was medically reasonable and necessary. Dr. Kim recommended in his examination of November 30, 2010, that Ryan wear a neck brace for a period of two to three months. This treatment would decompress Ryan’s cervical spine and immobilize her neck. However, Dr. Kim also noted in his records that Ryan “had a pain that has been fairly refractory to nonsurgical treatment including pain medication, muscle relaxant, and epidural steroid injection treatment.” If the neck brace did not alleviate Ryan’s symptoms of pain, Dr. Kim recommended a posterior surgical approach rather than the anterior approach recommended by Dr. Graham. However, Dr. Kim could not indicate whether “either approach is right or wrong.”
¶ 19. Dr. Graham was asked in his deposition of February 10, 2011, why he disagreed with Dr. Kim’s recommended procedure:
Q. But you don’t agree with that?
A. I agree that a posterior laminecto-my, which is what he’s recommending, would adequately decompress her spinal canal, thereby alleviating her mye-lopathic symptoms. It will not address her neck pain issues if they persist following the procedure. I have no problems if the answer is all the parties want you to have the posterior laminectomy, fíne. That’s a case to do. But I don’t want anyone to be surprised if she continues to have neck pain afterwards and then demands another procedure to be performed. And I give everyone the choices upfront, and then let them decide which direction they want to go.
[[Image here]]
Q. All right. The surgical procedure, does that address the bad neck, or does that address the pain in the neck from falling on the stool?
A. Depends on which procedure you do. If you do the posterior procedure you’re addressing the bad neck. If you do the fusion, you’re more addressing the neck pain, as well.
Q. He also recommended that she do a neck brace for two to three months—
A. Yes.
Q. —as a conservative treatment?
A. Yes, sir.
Q. Would you agree with that attempt at treatment?
A. You’re certainly welcome to. You’re not going to change the fact that she has five millimeters of space available for her cord....
The Commission’s determination that the anterior surgical procedure recommended by Dr. Graham was medically reasonable and necessary is based on substantial evidence.
CONCLUSION
¶ 20. The Commission issued an order that affirmed the AJ’s order awarding compensation for surgery and other medical treatment to Ryan. The order holds that Imperial Palace is financially responsible for these expenses. The Commission’s order is based on substantial evidence. Therefore, we are bound by the Commission’s finding of facts in this matter and affirm.
¶ 21. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPEN *635 SATION COMMISSION IS AFFIRMED; ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ„ CONCUR.