MAXWELL, J„
for the Court:
¶ 1. The Workers’ Compensation Commission is the ultimate fact-finder in compensation cases.[1] Our appellate review of its decisions is quite limited, and we must affirm if substantial evidence supports the Commission’s decision. With this standard in mind, we review a compensation award to Virginia Applequist, an off-property director of player development for a Mississippi casino, who was injured in a car wreck. Her employing casino and its insurance carrier claimed she was outside the course and scope of her employment during the accident. But the Commission found Applequist was returning from conducting market research of a competing gaming facility — a duty within her job description. While this court might not have reached the same decision, we find substantial evidence supports the Commission’s decision. So we must affirm.
Facts and Procedural History
¶ 2. Applequist has enjoyed a lengthy career in sales and event marketing spanning from California to Nevada and most recently in Mississippi and Alabama. In 2003, she moved from the Mississippi Gulf Coast, where she had worked as a casino host for Grand Casino Biloxi, to become an “executive host” for Pearl River Resort (PRR) in Choctaw, Mississippi. She worked for PRR in this role from July 2003 to December 31, 2009. Applequist was tasked with generating gaming revenues by building the casino’s client base. She also promoted shows, concerts, tournaments, lunches, dinners, parties, and other events to the casino’s existing and prospective clients. Her job required plenty of travel and making cold calls.
¶ 3. In January 2010, Applequist became PRR’s “off-property director of player development” in Birmingham, Alabama. Several new slot-parlor type bingo facilities had sprung up around Birmingham.[2] And while PRR did not have casinos in Alabama, it offered the closest casino with gaming tables and maintained a strong market presence in Birmingham and surrounding areas. Because PRR did not *1137 have an Alabama office, Applequist worked from her Dora, Alabama home when she was not traveling, hosting events, or surveying competing bingo halls.[3] She had no fixed employment hours but often worked long hours. As she put it, her business “phone rang pretty much 24/7.”
¶ 4. According to Applequist, on January 23, 2010, she traveled to three new Alabama bingo facilities to survey them. Applequist had only lived in the area a few weeks, so she asked her sister — a long-time resident — to accompany her. The last hall they visited that night was Bama Bingo. Applequist testified that after surveying Bama Bingo, they left around 4 a.m. While driving home in a rain storm, their car hit a 400-pound wild hog. Both Applequist and her sister, who was driving, were injured and hospitalized for several days. While in the hospital, Applequist reported the accident to PRR. Applequist wore a back brace for ninety days and worked from home and by phone while recovering from her injuries. She continued to work for PRR as off-property director of player development until September 2011, when she was let go by the casino. She later filed for workers’ compensation benefits.
¶ 5. While PRR and the carrier argued otherwise, the administrative judge (AJ) found Applequist was returning home from conducting a work-related market survey when the wreck happened and was in the course and scope of her employment with PRR when injured. The Commission[4] affirmed the AJ’s finding of compensability and awarded her benefits. PRR and its carrier appealed.
Discussion
¶ 6. Appellate review of workers’ compensation claims is limited. Daniels v. Peco Foods of Miss., Inc., 980 So.2d 360, 363 (¶ 8) (Miss.Ct.App.2008). “[T]he Com, mission is the ultimate fact-finder.” Id. (quoting Hardin’s Bakeries v. Harrell, 566 So.2d 1261, 1264 (Miss.1990)). And it is the Commission, not this court, that makes credibility determinations. Waffle House, Inc. v. Allam, 976 So.2d 919, 922 (¶ 10) (Miss.Ct.App.2007). When the Commission’s decision is supported by substantial evidence, it must be upheld. Smith v. Johnston Tombigbee Furniture Mfg. Co., 43 So.3d 1159, 1164 (¶ 15) (Miss.Ct.App.2010) (citing Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994)). This is true “even though we might have reached a different conclusion were we the trier of fact.” Id. Substantial evidence is “such relevant evidence as reasonable minds might accept as adequate to support a conclusion.” Imperial Palace of Miss., LLC v. Ryan, 113 So.3d 630, 632 (¶ 10) (Miss.Ct.App.2013). This court will not reweigh the evidence or substitute its judgment for that of the Commission. Smith, 43 So.3d at 1164 (¶ 16) (citing Lifestyle Furnishings v. Tollison, 985 So.2d 352, 358 (¶ 17) (Miss.Ct.App.2008)).
¶ 7. In this classic swearing match, the AJ and Commission resolved the conflicting testimony and inferences in Apple-quist’s favor. PRR insisted Applequist was not really doing casino-related work when she was injured. But the AJ and Commission disagreed. The compensability finding simply boiled down to the fact that they believed Applequist. After re *1138 view, we find substantial evidence supports the Commission’s decision.
I. Work-Connected Injury
¶ 8. To recover workers’ compensation benefits, Applequist had to show she suffered a compensable injury.[5] This required she prove, by a preponderance of evidence, “(1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the ... claimed disability.” F & F Constr. v. Holloway, 981 So.2d 329, 332 (¶ 11) (Miss.Ct.App.2008). Of these three elements, the chief dispute here involves the second one—whether Apple-quist proved her accident arose out of and in the course of her employment with PRR.
¶ 9. The supreme court has shorthanded this second element a bit. For a claimant to prove an accident arising out of her employment, she need only show the disability is “work connected”—meaning the risk giving rise to the injury was “reasonably incident to the employment.” Fought v. Stuart C. Irby Co., 523 So.2d 314, 318 (Miss.1988). What this means in the context of a traveling salesman was established by our supreme court over fifty years ago.
¶ 10. In M.E. Badon Refrigeration Co. v. Badon, the supreme court looked to then-leading workers’ compensation treatises to generally hold that from the time a traveling employee leaves home on a business trip until his or her return, the employee is within the course of employment for workers’ compensation purposes. M.E. Badon Refrigeration Co. v. Badon, 231 Miss. 113, 117-18, 95 So.2d 114, 115 (1957) (citing Larson, Workmen’s Compensation § 16.00).[6] This is so unless the worker has deviated from his or her work task or is on a personal errand. Bryan Bros. Packing Co. v. Dependents of Murrah, 234 Miss. 494, 500, 106 So.2d 675, 677 (1958). Otherwise, an injury during travel is compensable “if the making of that journey, whether or not separately compensated for, is in itself a substantial part of the service for which the worker is employed.” Badon, 231 Miss. at 117-18, 95 So.2d at 115 (quoting Larson, Workmen’s Compensation § 16.00). And here travel was unquestionably a large part of Applequist’s work. Her job description with PRR, which was entered into evidence, emphasized that the director of player development “[m]ust be willing and able to work extended shifts, nights, weekends, holidays and during special events.” Part of her job duties was the willingness *1139 “to perform extensive travel, including overnight visits, as required.” (Emphasis added). Applequist testified she had no set work hours and often worked nights and extended shifts. She also explained that her work required frequent and often spontaneous travel. Thus, she would no doubt be covered for workers’ compensation purposes, if her travel here was deemed work related.
II. Competing Evidence
¶ 11. But as PRR and the carrier see it, Applequist was not really carrying out a work task for PRR when the accident happened. They point to proof that Applequist was with her sister at the bingo parlor, it was 4 a.m. when they left the facility, and her sister was driving when they wrecked. When coupled with the facts that Applequist did not submit an itinerary, travel vouchers, or a marketing report, and did not immediately seek workers’ compensation benefits, PRR and the carrier suggest the proof was high that the outing was personal, not business related.
¶ 12. In response, Applequist explained she had only lived in the area a few weeks. So when she set out to survey the gaming operations that night, she asked her sister, who was more familiar with the area, to drive. The sixty-eight-year-old Applequist also claimed to have taken prescription pain medication, another reason she felt her sister was more suitable to drive in the heavy rain when they left Bama Bingo.
¶ IB. As to travel reimbursement, Ap-plequist testified that she and her supervisor, Leah Downie, had agreed in November 2009 she would submit three-month estimates of projected expenses. This would allow her to receive travel advances when she moved to Alabama in January 2010. An email memorializing this agreement was entered into evidence. And Ap-plequist believed she was operating under this new agreement. Her stated reason for not later seeking mileage reimbursement nor submitting a market-study report about Bama Bingo was her injuries. She recounted her hospitalization and the ninety days she spent in a back brace. During this time, her focus was on recuperating and maintaining client relations by phone and email.
¶ 14. While she gave PRR notice of her injury, Applequist claimed not to have immediately sought workers’ compensation benefits because she had never had a work injury. And she only considered filing a workers’ compensation claim after learning the hospital had not obtained precertification for her treatment, so her insurer would not pay a large part of her medical costs.[7]
¶ 15. Applequist’s boss at PRR, Jason York, corroborated her testimony that Ap-plequist’s job duties involved investigating competing gaming operations. He explained that bingo halls were a “potential threat” to PRR because a large part of the Mississippi casino’s traffic was from central Alabama. So it was reasonable for Applequist to scope out bingo facilities and their operation methods, though he did not feel the type of bingo halls at issue merited in-depth study. York acknowledged that Applequist was an excellent employee — that she was “very good at what she did.”
¶ 16. While there was speculation and a variety of inferences that led PRR and the carrier to believe Applequist was on a jaunt, the Commission saw it otherwise. *1140 There was testimony in the record from Applequist about her claimed inspections of the gaming operations on the night she wrecked, detailing her specific focus on the facilities. She testified she assessed the location and size of each operation, and checked to see if their parking lots were full. And once inside, she scoped out the parlor’s set up, varied amenities, and gaming machines, and whether playing-card programs were utilized.
 ¶ 17. Our review shows the Commission sifted this competing evidence and ultimately believed that Applequist — a covered traveling employee for workers’ compensation purposes — was returning home from conducting a market survey for PRR when she was injured in the accident. While this court might have reached a different result were we the fact-finder here, credibility decisions in workers’ compensation cases are for the Commission, not appellate courts. Martinez v. Swift Transp., 962 So.2d 746, 751 (¶ 24) (Miss.Ct.App.2007). And on appeal, we must give “substantial deference” to these credibility calls. Id. Because we find substantial record evidence supports the Commission’s decision, we affirm the finding of compensability and award of benefits.
¶ 18. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR. IRVING AND GRIFFIS, P.JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. Pilate v. Int'l Plastics Corp., 727 So.2d 771, 774 (¶ 12) (Miss.Ct.App.1999) (citing Natchez Equip. Co. v. Gibbs, 623 So.2d 270, 273 (Miss.1993)).

. These bingo halls were casinos with slot machines but no gaming tables. They served complimentary light meals but no alcohol.

. In August 2009, PRR asked Applequist to prepare a market survey of the new Birmingham bingo facilities. She began traveling to Birmingham for that purpose before moving there.

. Chairman Liles Williams dissented.

. See Miss.Code Ann. § 71—3—3(b) (Rev.2011) ("Injury” under the Mississippi Workers’ Compensation Act "means accidental injury ... arising out of and in the course of employment without regard to fault which results from an untoward event or events, if contributed to or aggravated or accelerated by the employment in a significant manner.”).

. Badon also stated:
While Traveling. [] With respect to the compensability of injuries to employees, the performance of whose . duties necessitates their traveling from place to place away from the premises of the employer, sustained while so traveling, as arising out of and in the course of the employment, the right to compensation depends, as in other cases generally, upon whether the injury results from a risk which is inherent in the nature of the employment, or which is reasonably incidental thereto, or to which the employee is specially exposed, and upon whether the employee, at the time of the occurrence of the accident, was engaged in the exercise of some function or duty reasonably necessary or incidental to the performance of the contract of employment, or, if not actively engaged, whether he was at a place where he was authorized or required by such contract to be.
Id. (citing 58 Am.Jur., Workmen’s Compensation § 225 at 730-31).

. We agree with the Commission that Apple-quist's failure to immediately appreciate the work-connected injury did not render her injury noncompensable, particularly when she notified her employer of her injury within hours.