962 So.2d 746 (2007)
Calixto MARTINEZ, Appellant
v.
SWIFT TRANSPORTATION and Insurance Company of the State of Pennsylvania, Appellees.
No. 2006-WC-01442-COA.
Court of Appeals of Mississippi.
August 14, 2007.
*747 John Hunter Stevens, attorney for appellant.
L. Pepper Cossar, Ridgeland, attorney for appellees.
Before KING, C.J., GRIFFIS and BARNES, JJ.
KING, C.J., for the Court.
¶ 1. Calixto Martinez appeals the trial court's decision upholding the order of the Mississippi Workers' Compensation Commission. In that order, the Commission reversed the decision of the administrative law judge (ALJ), in which the administrative law judge found that Martinez was entitled to temporary total disability benefits at a rate of $316.46 per week for the period beginning April 12, 2001 through September 19, 2002, and permanent partial disability benefits for an 8% total body impairment rating at a rate of $252.51 per week for a period of 450 weeks, beginning September 19, 2002. The Commission upheld the award of temporary total disability benefits. The Commission also held that Martinez was not entitled to the permanent partial disability benefits as awarded by the ALJ; however, Martinez was entitled to receive permanent partial disability benefits for a 30% loss of use to his right arm at a rate of $316.46 per week for a period of 60 weeks. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. Calixto Martinez is a fifty-five-year-old Hispanic male who emigrated to the United States from Mexico in 1976. He received his education in Mexico, where he completed ten years of general education (the Mexican equivalent of a high school *748 diploma) and received three years of training in the electrical field and three years of training as a mechanic. His educational credentials are not recognized in the United States, and his only vocational training in the United States was a three-week truck-driving class. Since arriving in the United States, Martinez has worked as a farm laborer, auto mechanic, forklift operator, machine operator, light electrician, and truck driver.
¶ 3. In April 2001, Martinez was employed with Swift Transportation as an over-the-road truck driver. On April 12, 2001, while Martinez was driving through Knoxville, Tennessee, a passenger car suddenly swerved in front of Martinez. Martinez, who was obeying the speed limit and all other traffic laws, swerved to avoid the car. As a result, he crashed into the median. His 18-wheeler jack-knifed and caught fire, resulting in a total loss of the tractor-trailer, which was valued at approximately $150,000. Martinez escaped with lacerations to his face and pain in his right shoulder and torso. He received emergency treatment in Knoxville before returning home. The emergency room physicians advised him to seek follow-up care.
¶ 4. Martinez sought treatment with Dr. Jose Ferrer, an orthopedic surgeon, on April 27, 2001, complaining of significant pain in his abdomen and torso. Following a physical examination and x-rays, Dr. Ferrer concluded that Martinez was suffering from a left rib fracture and a right shoulder contusion and sprain. Dr. Ferrer restricted Martinez's activities for three days, releasing him back to work on April 30, 2001. Martinez did not see Dr. Ferrer again for treatment until September 3, 2002.
¶ 5. The medical records submitted for review by the administrative law judge indicate that Martinez began seeing another orthopedic surgeon, Dr. H.F. Savoie, regarding his shoulder injury at some point before September 11, 2001. Dr. Savoie's September 11, 2001 report indicates that Martinez was undergoing physical therapy and was restricted from working until at least September 24, 2001. On October 25, 2001, Dr. Savoie declared that Martinez was at MMI, although he was concerned that Martinez might need further treatment at some point in the future. Dr. Savoie rated Martinez as having an 8% impairment to his arm, which translated to a 5% impairment to the entire body.
¶ 6. Martinez saw Dr. Savoie again in January 2002 with complaints of shoulder pain. An MRI scan revealed an injury requiring surgery on the right shoulder. Dr. Savoie operated in February 2002, repairing Martinez's rotator cuff. By June 24, 2002, Dr. Savoie stated that Martinez's shoulder "objectively looks quite good and his x-rays look quite good," but Martinez was still complaining of shoulder pain, popping, grinding, and swelling. At this time, Dr. Savoie still had not released Martinez to return to work. Dr. Savoie ordered an arthrogram, which came back negative. Dr. Savoie released Martinez to return to work on July 25, 2002. On September 19, 2002, Dr. Savoie issued a final impairment rating. Dr. Savoie determined that Martinez had "a total permanent partial impairment of 14% to the right upper extremity based on the problems in his shoulder. A 14% impairment to the upper extremity is an 8% impairment to the body as a whole. He can be safely released at MMI with a 14% impairment to the arm and 8% to the body." Dr. Savoie further found that Martinez had no permanent restrictions or limitations related to his shoulder injury, but Dr. Savoie acknowledged that Martinez was seeing a second physician for injuries to his ribs and chest *749 and that Martinez might have some restrictions associated with those injuries.
¶ 7. During the final stages of his treatment with Dr. Savoie, Martinez returned to see Dr. Ferrer on September 3, 2002. This time, Martinez was complaining of "severe left lumbar pain and pain in the sternum." Dr. Ferrer conducted some tests and gave Martinez a steroid shot for immediate pain relief. Two weeks later, Martinez returned for a follow-up visit. At that time, Dr. Ferrer diagnosed Martinez with "severe posttraumatic arthritis of the sternal manubrial joint." Dr. Ferrer concluded that Martinez had an 8% total body impairment rating based on his shoulder injury, the arthritis, and some remaining issues stemming from Martinez's rib fracture. Dr. Ferrer released Martinez to return to work with the following restrictions: "no heavy lifting more than 15 pounds and no overhead work."
¶ 8. Martinez filed his petition to controvert on November 7, 2002. Swift answered the petition and subsequently named Dr. Rahul Vohra as a medical expert and Mr. Bruce Brawner as a vocational expert. Swift contested the existence and extent of Martinez's temporary total and permanent partial disability as a result of the work-related accident.
¶ 9. Dr. Vohra examined Martinez on December 8, 2003. After a physical examination and a review of Martinez's medical records, Dr. Vohra requested a functional capacity exam. Dr. Vohra's initial impression was that Martinez exhibited signs of histrionics and pain amplification. The results of the functional capacity exam (FCE) were inconclusive, as the therapist conducting the examination found that the results indicated "what the patient was willing to do and not his physiological maximum." She concluded that it was "difficult to determine true physical abilities at this time." Dr. Vohra reviewed the results of the FCE and concluded that Martinez was able to "work at a full-duty level other than overhead lifting," which Dr. Vohra recommended be limited "to 50 lbs on an occasional basis." Ultimately, Dr. Vohra adopted Dr. Savoie's 14% impairment rating for Martinez's right arm.
¶ 10. On March 15, 2005, following a hearing on February 7, 2005, the ALJ entered an order. In that opinion, the ALJ adopted the findings of Drs. Ferrer and Savoie, which held that Martinez had an 8% impairment to his body based on the injuries sustained in the accident. The ALJ further found that Martinez was restricted from lifting more than fifteen pounds. The ALJ concluded that these restrictions, combined with Martinez's age, employment history, limited education, and county of residence, made finding employment difficult.
¶ 11. Based on those findings, the ALJ granted Martinez temporary total disability benefits from the date of the accident, April 12, 2001, through the date of Martinez's maximum medical improvement, September 19, 2002. The ALJ also ordered payment of permanent partial disability, based on the 8% total body impairment rating, for a period of 450 weeks.
¶ 12. Swift appealed to the Commission, which determined that Martinez suffered two work-related injuries, one to his rib and sternum and one to his right shoulder. The Commission discounted Dr. Ferrer's findings that 3% of Martinez's 8% body impairment was due to the rib and sternum injury and found that Martinez suffered no lasting effects from the injury to his rib and sternum. The Commission did adopt Dr. Savoie's 14% impairment rating to Martinez's arm, a finding that was also adopted by Swift's expert, Dr. Vohra.
¶ 13. Because the Commission concluded that Martinez's permanent injury was *750 limited to his shoulder, the Commission also found that the total body impairment rating would not apply. Accordingly, the Commission treated Martinez's injury as a scheduled member injury and not as a total body injury. Given the restrictions on Martinez's ability to use his arm and his previous employment history, the Commission concluded that Martinez had suffered a 30% loss of the use of his right arm for wage-earning purposes. The Commission overruled the ALJ's award with respect to permanent partial disability benefits to the body as a whole and awarded Martinez permanent partial disability benefits based on its findings of an injury to a scheduled member. The Commission did not disturb the ALJ's award of temporary total disability benefits.
¶ 14. Martinez appealed the Commission's order to the Circuit Court of Claiborne County. The trial judge affirmed the award of the Commission. Martinez timely appealed.

STANDARD OF REVIEW
¶ 15. This Court's standard of review for decisions of the Workers' Compensation Commission is limited. This Court will reverse an order of the Workers' Compensation Commission "only when a Commission order is not based on substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law." Smith v. Jackson Constr. Co., 607 So.2d 1119, 1124 (Miss.1992). Substantial evidence is defined as "more than a `mere scintilla,'" but it does not rise to the level of a preponderance of the evidence. Delta CMI v. Speck, 586 So.2d 768, 773 (Miss.1991).
¶ 16. In reviewing the facts on appeal, this Court's "function is to determine whether there is substantial credible evidence which would support the factual determination made by the Commission." Hardin's Bakery v. Taylor, 631 So.2d 201, 205 (Miss.1994). If the Commission's findings are supported by substantial evidence, this Court is bound to accept those findings, "even though that evidence would not be sufficient to convince us were we the fact finders." Id.

ANALYSIS
¶ 17. Martinez's single issue on appeal is whether the Commission erred in failing to award benefits based on an injury to the body as a whole. Martinez cites Mississippi Code Annotated Section 71-3-17 (Rev.2000) and argues that the Commission erred in holding that Martinez's disability was limited to his upper extremity due to the shoulder injury. The Commission's findings state that Martinez was not entitled to an award based on an injury to the body as a whole because Martinez did not suffer any disability with regard to his rib and sternum injury. Martinez contends that the Commission's findings on this issue are not based on substantial evidence and are contrary to law.
¶ 18. The Commission adopted the findings of Drs. Savoie and Vohra and rejected the findings of Dr. Ferrer. The Commission based its findings on the objective medical evidence contained in the record. Accordingly, under the applicable standard of review, this Court holds that the Commission's findings are supported by substantial evidence and are not arbitrary or capricious.
¶ 19. Dr. Savoie treated Martinez for his shoulder injury and performed the surgery to repair the tear in Martinez's rotator cuff. Dr. Savoie concluded, when Martinez reached maximum medical improvement, that Martinez suffered a total permanent partial impairment of 14% to his right arm. Dr. Savoie also concluded that there were "[n]o permanent restrictions or limitations, however, as far as the *751 shoulder alone is concerned." Dr. Savoie rendered no opinion with regard to Martinez's rib and sternum injury, noting that another physician  Dr. Ferrer  was treating Martinez for that condition.
¶ 20. Dr. Vohra reviewed Dr. Savoie's records and conducted his own examination of Martinez. Dr. Vohra agreed with Dr. Savoie's assessment of Martinez's shoulder injury and adopted Dr. Savoie's 14% rating of permanent partial impairment to the right arm. Dr. Vohra disagreed with Dr. Savoie's findings that Martinez need not be subject to any restrictions, however, and imposed a restriction on Martinez's overhead lifting to fifty pounds on occasion.
¶ 21. Dr. Ferrer treated Martinez for his sternum and rib injury. When Dr. Ferrer initially treated the injury, he concluded that Martinez's fractured rib would restrict his ability to work for three days but that Martinez could be released with no restrictions thereafter. He concluded that Martinez would reach maximum medical improvement within three days, that the injuries would heal, and that Martinez would suffer no impairment as a result.
¶ 22. When Martinez returned for treatment almost eighteen months later, Dr. Ferrer conducted tests, including a CT scan, and concluded that Martinez suffered post-traumatic sternal arthritis that created a 1% impairment to Martinez's body and post left rib cage fractures with chronic interscapular strain that created a 2% impairment to Martinez's body. Dr. Ferrer further opined that Martinez's shoulder injury created a 5% impairment to Martinez's body. Dr. Ferrer then imposed the lifting restriction of no more than fifteen pounds based on Martinez's impairment rating.
¶ 23. Dr. Vohra examined Martinez and reviewed Dr. Ferrer's notes. It appears, however, that Dr. Vohra did not have access to the films of the CT scan. Dr. Vohra noted in his physical examination that while Martinez complained of sharp pain in the area between the ninth and twelfth ribs, consistent with his injury (a fracture of the ninth rib), given Dr. Ferrer's diagnosis, there was no explanation for Martinez's continued complaints of severe pain. Additionally, Dr. Vohra noted that "interestingly," Martinez was not experiencing pain in his upper sternum, as would be expected from reviewing Dr. Ferrer's notes, but was complaining of pain in his lower sternum. Dr. Vohra suggested a CT scan of Martinez's lower sternum and a bone scan. It does not appear from the record that these tests were ever ordered. Dr. Vohra ultimately concluded that absent some significant findings in the recommended tests, Martinez should be considered at maximum medical improvement with respect to the rib and sternum injuries and would not be eligible for an impairment rating based on the types of injuries he sustained.
¶ 24. The Commission, sitting as the finder of fact, has the power to determine which evidence it finds credible and which evidence it does not. Raytheon Aero. Support Svcs. v. Miller, 861 So.2d 330, 335(¶ 11) (Miss.2003). As such, the findings of the Commission with regard to the credibility of evidence are due substantial deference, and this Court will not disturb those findings absent a finding that the Commission acted arbitrarily in judging the evidence before it. Id. Because the Commission rejected Dr. Ferrer's objective medical findings in favor of Dr. Vohra's objective medical findings, this Court cannot say that the Commission's findings are arbitrary or capricious. Martinez argues that the Commission was required to give greater weight to Dr. Ferrer's findings because Dr. Ferrer was a treating physician and Dr. Vohra was retained *752 as an expert for Swift. While it is true that it is a "self-evident proposition" under workers' compensation law that "treating physicians' opinions carry more weight than those of physicians who examine a claimant solely for purposes of testifying," Clements v. Welling Truck Svc., Inc., 739 So.2d 476, 477, n. 1 (¶ 9) (Miss. 1999), Mississippi law does not require the Commission to give a treating physician's opinion more weight than an expert witness physician's opinion. See, e.g., Doyle v. Public Emples. Ret. Sys., 808 So.2d 902, 907 (¶¶ 17-18) (Miss.2002) (holding that Mississippi law requires no such deference to a treating physician's opinion); Mabry v. Tunica County Sheriff's Dep't, 911 So.2d 1038, 1042(¶ 12) (Miss.Ct.App.2005) (holding that the Commission, as the trier of fact, determines the credibility of conflicting medical opinion testimony without regard to treating versus non-treating physician status).
¶ 25. In finding that Martinez suffered a disabling injury to his arm only, and not to his rib and sternum, the Commission noted that Dr. Ferrer's initial opinion found that Martinez suffered no impairment and required no restrictions. The Commission specifically found that Dr. Ferrer's second assessment of a 3% impairment rating was not credible. Instead, the Commission relied on Dr. Vohra's conclusions with respect to the rib and sternum injury. This Court finds that the Commission acted within its authority in determining that Dr. Ferrer's opinions were not as credible as those of Dr. Savoie and Dr. Vohra.
¶ 26. Having issued a finding of permanent partial disability with regard to Martinez's arm only, the Commission correctly concluded, as a matter of law, that Martinez's injury was subject to disability benefits under the scheduled member chart set forth in Mississippi Code Annotated Section 71-3-17(c)(1) and not the general total body impairment scheme stated in Mississippi Code Annotated Section 71-3-17(c)(25).
¶ 27. Given the 14% impairment rating given by both Dr. Savoie and Dr. Vohra and the lifting restriction imposed by Dr. Vohra, the Commission concluded that Martinez suffered a 30% loss of wage-earning capacity in his right arm due to the injury to his right shoulder. The Commission then awarded permanent partial disability benefits for sixty weeks (30% of the 200 weeks required by statute for the total loss of an arm) at a rate of $316.46 per week (66-2/3 of Martinez's stipulated average weekly wage of $584.74 as required by statute). This award is consistent with the requirements of Mississippi Code Annotated Section 71-3-17 and is not contrary to law.
¶ 28. For the foregoing reasons, this Court affirms.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF CLAIBORNE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.