MYERS, J„
for the Court:
¶ 1. Michael Kukor was seriously injured when he fell trimming a tree in the course of his employment. It was not disputed that the injury was compensable; the issues before the Workers’ Compensation Commission were the extent of Kukor’s resulting disability and whether the two businesses he worked for at the time of the injury were one employer for the purposes of the workers’ compensation statute. The Commission found that Kukor was working only for Northeast Tree Service at the time of his injury and that Northeast and Jay’s Service Company were not one employer. It also rejected Kukor’s contention that he was permanently, totally disabled, finding he had suffered only a 75% loss of earning capacity. Kukor contests these findings on appeal. The circuit court affirmed, and we likewise affirm that judgment.
FACTS
¶ 2. Kukor worked for two businesses owned and operated by Jim Albritton, Northeast and Jay’s. Northeast is a limited liability company, while Jay’s is a sole proprietorship. Albritton managed both companies. Northeast’s business was cutting and trimming trees, while Jay’s performed stump and debris removal services. Both businesses sometimes worked separately, but often they worked on the same job site together.
¶ 3. Northeast employed four or five tree trimmers, who also often worked for Jay’s. Jay’s employed about sixteen other workers, who never worked for Northeast. If both companies were working at the same job site, Northeast’s tree trimmers would work for Jay’s if there was not enough tree trimming work. Often jobs did not require all of Northeast’s tree trimmers; Albritton would allow them to work on the ground for Jay’s. If a trimmer cut trees before working on the ground, Albritton considered him to be working for Northeast while trimming trees and working for Jay’s afterwards. The two companies had separate payrolls and separate workers’ compensation insurers. An employee who worked for both companies had to execute separate job applications and *1136 withholding documents. Albritton admitted that he operated two businesses in part because a tree trimming company’s employees could only be insured through the assigned risk pool, which has very high workers’ compensation premiums.
¶ 4. Kukor testified that he had applied for a job with Northeast. He was hired, and his job duties included trimming trees and miscellaneous work on the ground. Kukor received checks from both Northeast and Jay’s, earning the same hourly wage from each. He testified that he initially believed he worked for Northeast and did not understand why he had received checks from two different companies. Most of Kukor’s hours came from Jay’s.
¶ 5. On May 23, 2003, Kukor fell while repelling down a tree. After about a year, he attempted to return to work at a light-duty position with Jay’s, but Kukor testified he was unable to handle the work. He filed petition to controvert, contending that Jay’s and Northeast were one employer and that he was permanently, totally disabled by his injuries. The administrative judge agreed with Kukor’s contentions, but the Commission did not. Kukor initially appealed from the Commission’s decision reversing the administrative judge’s order, but we dismissed that appeal as interlocutory because the Commission had remanded the case to the administrative judge for further findings regarding Kukor’s weekly wage with Northeast. Kukor v. Ne. Tree Serv., Inc., 992 So.2d 1242 (Miss.Ct.App.2008). On remand, those findings were made, and Kukor again appeals.
STANDARD OF REVIEW
¶ 6. The Commission’s decision is afforded great deference by Mississippi courts. We will reverse the Commission’s rulings only where findings of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision is arbitrary and capricious. Hale v. Ruleville Health Care Ctr., 687 So.2d 1221, 1225 (Miss.1997).
¶ 7. Substantial evidence, though not easily defined, has been said to be “such relevant evidence as reasonable minds might accept as adequate to support a conclusion.” Delta CMI v. Speck, 586 So.2d 768, 773 (Miss.1991). Substantial means more than a “mere scintilla” of evidence that does not rise to the level of a preponderance of the evidence; the record must afford “a substantial basis of fact from which the fact in issue can be reasonably inferred.” Id. We will not hesitate to reverse a decision of the Commission that is not supported by substantial evidence. Foamex Prods., Inc. v. Simons, 822 So.2d 1050, 1053 (¶ 11) (Miss.Ct.App.2002).
¶ 8. As to questions of law, our standard of review is de novo. Harrison County v. City of Gulfport, 557 So.2d 780, 784 (Miss.1990). Nonetheless, we will not interfere with the Commission’s application of the law unless it is found to be clearly erroneous. Duke ex rel. Duke v. Parker Hannifin Corp., 925 So.2d 893, 896 (¶ 11) (Miss.Ct.App.2005).
DISCUSSION
1. Alter Ego; Joint Employment
¶ 9. The average weekly wage prior to injury is used to determine compensation for an injured worker’s lost earnings. Miss.Code Ann. § 71-3-31 (Rev.2000). This wage calculation is “determined from the earnings of the injured employee in the employment in which he was working at the time of the injury....” Id. Compensation is limited to what the claimant earned “in the job in which he was working at the time of his injury.” Tripp v. Orkin Amusement, Inc., 437 *1137 So.2d 1013, 1013 (Miss.1983). Nonetheless, we have held that the weekly wage includes all wages from the employer, regardless of whether the employee nominally holds more than one position with that employer. Piney Woods Country Life Sch. v. Young, 946 So.2d 805, 809-10 (¶ 17) (Miss.Ct.App.2006).
¶ 10. The Commission determined that Kukor was working only for Northeast at the time of his injury; consequently, it used his average weekly wage from only that company to determine the amount of his benefits. As Kukor earned more from Jay’s, including those wages would result in a substantial increase in his benefits.
¶ 11. Kukor makes several arguments in support of this issue. He first contends that Jay’s and Northeast are “alter egos” of each other, essentially that they are the same company. Liberty Mut. Ins. Co. v. Holliman, 765 So.2d 564 (Miss.Ct.App.2000). In Holliman, we held:
In determining whether these two corporations were one and the same, the Commission looked at the factors outlined in Smith v. St. Regis Corp., 850 F.Supp. 1296, 1311 (S.D.Miss.1994). These factors included “same management, same business purpose, same operation, same equipment, same customers, same supervision, and same ownership.” Id. The Commission further looked for “such a unity of interest and ownership” between the alleged separate entities that “adherence to the fiction of separate corporate existence would under the circumstances sanction a fraud or promote injustice.” FMC Finance Corp. v. Murphree, 632 F.2d 413, 422 (5th Cir.1980). The Commission analyzed these factors and found that the alleged two entities had a unity of interest and/or ownership, and they, in fact, did not operate separately.
Id. at 570 (¶ 14).
¶ 12. Kukor contends that Jay’s is an “illegal” sham company created by Albrit-ton to reduce his workers’ compensation costs.[1] He focuses on the fact that both businesses were owned and operated by Albritton. Both operated out of Albrit-ton’s home office and used the same phone number. Employees for both businesses would meet at Albritton’s home, where he would personally hand out work assignments to each employee. All of the equipment was owned by Albritton, and some of it was shared between the businesses. Al-britton admitted that Jay’s sometimes worked as a “subcontractor” to other businesses such as builders and landscapers; this included Northeast. Because Northeast’s tree trimming business often did residential work, it advertised heavily to the public. Jay’s, on the other hand, primarily did commercial work which was advertised by word of mouth. Despite this explanation, Northeast advertised stump removal, a job that would be done by Jay’s. Albritton would also sometimes quote residential customers one price for tree cutting and debris removal. Kukor also points to the fact that after his injury, Albritton sent him a letter on Northeast letterhead offering him a light-duty position with Jay’s. Additionally, Albritton paid Kukor for lost wages with Jay’s for about one year after the accident.[2]
*1138 ¶ 13. The Commission addressed this argument, rejecting Kukor’s alter ego theory. It noted that both Northeast and Jay’s were owned and operated by Albrit-ton. It found, however, that Albritton had “gone to great lengths to separate [them]” and that his “reasons for operating two businesses that compliment one another are, insofar as we can tell, legal, legitimate, and understandable.” The Commission noted that the “businesses had separate insurers, different names, and different areas of expertise.”
¶ 14. The Commission’s decision on this issue is a factual finding, entitled to great deference on appeal. We are required to affirm even if this Court, as the fact-finder, would have reached the opposite conclusion. Clark v. Spherion Corp., 11 So.3d 774, 777 (¶ 13) (Miss.Ct.App.2009) (citations omitted). We may interfere only when the Commission’s factual findings are found to be unsupported by substantial evidence. Id.
¶ 15. It is true, as Kukor argues, that Albritton owned and managed the two companies. However, that is only one factor in the analysis. As the Commission noted, Northeast and Jay’s have distinct, if complimentary, business purposes. There is a clear demarcation between the activities of the two businesses. The Commission considered the relevant factors; the question of what weight to assign each factor is within its discretion as the finder of fact. We therefore find substantial evidence supporting the Commission’s decision that Northeast and Jay’s are not alter egos of the same company.
¶ 16. We also reject Kukor’s contention that this is a case of “dual employment” or “joint service.” This refers to a situation where the employee is in the service of two employers “in relation to the same act.” Goolsby Trucking Co., Inc. v. Alexander, 982 So.2d 1013, 1026 (¶ 35) (Miss.Ct.App. 2008). Kukor fell while trimming a tree, which fits squarely within the activities of Northeast. There is no question that he was in its service alone at the time of the injury.
¶ 17. Finally, Kukor argues that the result is simply unfair, and that it encourages an employer to use part-time workers in dangerous jobs to reduce their potential compensation for lost wages. The Mississippi Supreme Court addressed the same argument in Sullivan v. City of Okolona, 370 So.2d 921 (Miss.1979). Sullivan served as a volunteer firefighter, a part-time position for which he received only nominal compensation. He was injured in that capacity and was unable to work his regular employment. He received essentially no compensation for lost wages, however, because under the statute the benefit for lost wages was derived from his salary as a volunteer firefighter. The supreme court held:
At the time of [Sullivan’s] injury, he was in the employment of the City of Okolo-na as a volunteer fireman, and it is on this basis that his compensation must be determined since he does not fall within any exceptions to the statute.
Id. at 924. It reasoned:
Although the result in this case is harsh, we are of the opinion that the statute provides no solution that would be just and fair to all parties and that the problem can only be corrected by legislation so that the employee, employer!,] and carrier will know their rights and liabilities thereunder.

Id.

¶ 18. This issue is without merit,
*1139 2. Extent of Disability
¶ 19. Next, Kukor contends that the Commission erred in finding he had suffered only a 75% loss of earning capacity. He contends that the evidence can only support a finding of total disability.
¶ 20. Kukor suffered back and wrist injuries in his fall. He reached maximum medical improvement on the wrist injuries about three months later, with a 15% impairment rating to his right wrist and an 18% impairment rating to his left wrist. Kukor was also diagnosed with a “very subtle compression fracture of the lower thoracic spine,” which left him with a 5% physical impairment rating to the body as a whole, as well as restrictions to lifting thirty pounds and against repetitive bending, twisting, or stooping. Kukor could not return to his pre-injury employment as a tree trimmer and testified that he had not been able to find work with his limitations.
¶ 21. On appeal, Kukor focuses on his inability to secure employment after a lengthy job search. Kukor testified that he submitted more than one hundred applications but did not receive a single job offer. He contends that his physical impairments and limited education — Kukor completed only the tenth grade — render him totally and permanently disabled. He also points to his own testimony regarding the continuing pain he suffers from his injuries.
¶ 22. Disability is the “incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings.” Miss.Code Ann. § Yl — 8—3(i) (Rev.2000).
¶ 28. The Commission found:
Reviewing the evidence as a whole, it becomes clear that while [Kukor] has sustained a significant loss of wage earning capacity, the proof falls shy of permanent and total disability.
[[Image here]]
It should be noted that [Kukor] was initially released to return to light duty work and a light duty job was offered to him by Jay’s Service Company. [Kukor] reported for work for one day and then did not return. [He] is fairly young at age of [thirty-six] and retains the ability and experience to return to employment in a variety of jobs in the medium to light category. It should be apparent then that the claimant retains some capacity to earn wages[.]
¶ 24. While Kukor was unable to return to his previous work trimming trees, he was offered a light-duty position with Jay’s, primarily driving a dump truck. Kukor testified that the driving hurt his back; however, Albritton testified that Ku-kor had quit without speaking to him and that he would have tried to adapt the position to further accommodate Kukor’s restrictions.
¶ 25. The Commission must evaluate the evidence as a whole to determine loss of wage-earning capacity. Guardian Fiberglass, Inc. v. LeSueur, 751 So.2d 1201, 1205 (¶ 10) (Miss.Ct.App.1999). There was significant evidence Kukor was otherwise employable within his restrictions. The Commission based its conclusions on Kukor’s medical records and the testimony of Pete Mills, a vocational expert. Mills testified that based on his age, work history, and impairments, Kukor was employable and was capable of earning up to approximately eight dollars per hour. Mills identified a variety of positions Ku-kor could hold. Mills also expressed concern that Kukor may have failed in his job search because he had attached copies of his medical records to the applications. Mills also contacted some of the prospec *1140 tive employers, several of which had no record of Kukor’s application.
¶ 26. Having reviewed the record, we find the Commission’s finding on the extent of Kukor’s loss of wage-earning capacity is supported by substantial evidence. This issue is without merit.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON AND RUSSELL, JJ., CONCUR. IRVING, P.J., AND MAXWELL, J., NOT PARTICIPATING.

. Kukor asserts that Jay’s is an "illegal” company, apparently because it is not incorporated. He provides no support for this contention. According to the record. Jay’s is a sole proprietorship.

. Albritton voluntarily paid Kukor an additional $271 per week after the injury, the approximate additional benefit Kukor would have received if his wages from Jay’s had been included in computing his workers' compensation benefits for lost wages. Albrit- *1138 ton stopped paying this extra compensation after Kukor attempted to return to work, about one year after his injury.