MYERS, J.,
for the Court:
¶ 1. Terrience Bates appeals from the Lincoln County Circuit Court’s judgment affirming the decision of Mississippi Workers’ Compensation Commission (Commission) to deny the compensability of Bates’s alleged work-related injury. The Commission reversed the administrative judge’s (AJ) ruling that Bates had sustained a work-related injury to his lower back sometime during August 2005, while working for his employer Dedicated Management Group, LLC (DMG). Because the record evidence sufficiently supports the Commission’s decision, we affirm the circuit court’s judgment.
FACTS AND PROCEEDINGS
¶ 2. Bates, who has one and a half years of college education, began working for DMG in April 2005. His job primarily entailed unloading cargo laden pallets from tractor trailers with the use of a pallet jack.
¶ 3. In March 2006, Bates filed a petition to controvert, in which he claimed he injured his back while working for DMG on August 26, 2005. Specifically, Bates claimed he “slipped a disk while trying to maneuver a jack with no power steering.” DMG and its insurance carrier, Employers Insurance of Wausau, disputed compensa-bility. According to DMG, Bates never reported his injury, and his medical records did not corroborate a work injury.
*857 ¶ 4. In May 2008, a hearing on the merits was held before an AJ. Bates and Michael Butler, a former employee of DMG, testified at the hearing in support of Bates’s claim. James Randall Hughes, DMG’s general manager, testified as an adverse witness having been called to do so by Bates.
¶ 5. According to Bates, sometime in June or July 2005, he was assigned a faulty pallet jack to perform his duties as an “unloader” for DMG. Prior to that time, he had the use of a satisfactory pallet jack, but management made him surrender it to a “shuttle operator.”[1] Bates described the faulty pallet jack as an older model that was more difficult to operate than the other pallet jacks because it did not have power steering and proper brakes. Bates said maneuvering the faulty pallet jack required him to use more body force, which necessitated improper use of his hips.
¶ 6. When asked by his counsel to describe what he was doing when he was injured, Bates said he remembered feeling a sharp pain in his back as he bent over to cut cardboard away from one of the pallets.[2] Bates could not remember the exact date this occurred, but he was sure it happened sometime in August 2005. Bates recalled telling a few of his coworkers about the pain immediately afterwards, and he said he continued working at the warehouse throughout the night despite the pain. Bates testified that he did not inform a supervisor about the pain until the next evening, after he had already started his shift and had realized he was unable to work because of the pain. Bates recalled that the supervisor’s name was “Eric,” and Eric had told him to go get his back checked out at the hospital. Bates said he also may have informed “Randy,” who, according to the record, is Hughes.
¶ 7. Butler testified at the hearing that before he was terminated from DMG, he had worked as a shuttle operator at the same warehouse as Bates. Butler did not witness Bates injure himself, but he attested that Bates had used a faulty pallet jack. According to Butler’s testimony, one night in August 2005, at Butler’s behest, management made Bates exchange his good pallet jack for an “old faulty jack” that Butler had been using. Butler described the faulty pallet jack as an obsolete model that “hardly had any brakes ... [and] was hard to turn.” Butler said that after the exchange, he saw Bates a couples of times later that evening struggling with the faulty pallet jack.
¶ 8. Hughes testified that Bates showed up to work on August 22, 2005, with a doctor’s release from King’s Daughters Medical Center in Brookhaven, Mississippi, which stated that Bates was injured and could not work. According to Hughes, the release did not state that Bates had been injured at work. The record does not contain a copy of this medical release, but it does indicate that King’s Daughters Medical Center provided Bates a one-day work release on August 22. Hughes said that Bates showed up later that week with another doctor’s release, which excused him from work for a longer period. The record contains a copy of this medical release, which excused Bates from work until August 29, 2005, due to injury; it does not *858 mention Bates’s injury or how Bates was injured. Hughes said he honored both medical releases. According to Hughes, Bates did not show up to work on August 29, or any point thereafter, and DMG terminated Bates’s employment with the company on October 10, 2005. According to Hughes’s testimony and DMG’s pay records, August 19, 2005, was the last date on which Bates had actually worked at the warehouse.
¶ 9. Hughes testified that Bates never informed him that he had injured himself at work. Hughes also testified that DMG had no supervisor by the name of Eric working at the warehouse during Bates’s employment. Hughes said that even though he knew that Bates had been medically excused from work, he did not know that Bates was claiming a work-related injury until DMG’s home office later contacted him and asked him about it. Hughes said at that point, he asked “Rod,” one of the warehouse supervisors, about Bates’s alleged injury. According to Hughes, Rod had no knowledge about it.
¶ 10. Hughes further testified that he had no knowledge that Bates had been using faulty equipment at the warehouse. According to Hughes, none of the pallet jacks used at the warehouse have power steering, and he stated that he has worked in the warehouse industry for over twelve years and has never known any pallet jack to be equipped with such a feature. Hughes added that each warehouse employee is given an operator’s test, certified by the Occupational Safety and Health Administration (OSHA), which covers faulty equipment. Hughes said the employees are instructed to turn such equipment over to maintenance for repair.
¶ 11. In addition to the above-mentioned testimonies, Bates’s deposition, taken in March 2007, was submitted into evidence, along with Bates’s various medical records from King’s Daughters Medical Center. Included therewith was a written report from Dr. Ashraf Ragab, who had examined Bates in September 2006 and diagnosed Bates as suffering from a “right lateral recess stenosis due to a herniated disc at L5-S1.” Dr. Ragab stated in his report that Bates’s back condition and herniated disc were causally related to the nature of Bates’s work.
¶ 12. The AJ found that Bates proved by a preponderance of evidence that he had suffered a work-related injury to his back while working for DMG. The AJ noted that her decision was not easily reached because there were “considerable factual conflicts in [the] case.” She found, however, that the evidence, in its totality, supported the occurrence of a workrelated injury, despite the factual conflicts.
¶ 13. The Commission disagreed and reversed the AJ’s decision. According to the findings contained in its decision, the Commission gave little weight to Butler’s testimony because he did not witness Bates injure himself. The same can be said with regard to Dr. Ragab’s medical report, as the Commission determined that Dr. Ragab had based his assessment on Bates’s medical history, which the Commission found lacking credibility. As to Bates’s testimony, the Commission expressly found it unbelievable.
¶ 14. In sum, the Commission found that: Bates provided conflicting testimony with regard to the alleged date of his injury as well as the nature of the alleged accident that could have caused such injury; the medical records and wage records submitted into evidence conflicted with Bates’s testimony; and the medical records revealed that Bates’s back pain had been present for one month prior to the alleged date(s) of injury. The Commission, thus, concluded that Bates had failed to meet his burden of proof that he had a *859 compensable claim under the Mississippi Workers’ Compensation Law (“the Act”).
STANDARD OF REVIEW
¶ 15. “In workers’ compensation cases, a decision by the Commission is afforded great deference.” Langford v. Southland Tracking, LLC, 30 So.3d 1266, 1274 (¶ 28) (Miss.Ct.App.2010). The Commission is the trier and finder of facts, “the findings of the [AJ] to the contrary notwithstanding.” Smith v. Container Gen. Corp., 559 So.2d 1019, 1021 (Miss.1990) (quoting Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988)); see also Barber Seafood, Inc. v. Smith, 911 So.2d 454, 461 (¶ 27) (Miss.2005) (“The Commission is also the ultimate judge of the credibility of witnesses.”). A decision by the Commission may not be disturbed on appeal when it is supported by substantial credible evidence. See Coleman v. Chattanooga Container, 377 So.2d 606, 608 (Miss.1979) (“If the order of the Commission, be it for the claimant or for the employer/carrier, is supported by substantial evidence, it must stand.”).
ANALYSIS
¶ 16. Bates contends that the Commission denied his claim because he had mistakenly asserted in his petition to controvert that his injury occurred on August 26, 2005. Bates submits that the Commission failed to take into consideration the fact that he stated later in his deposition that he was not sure of the exact date when his injury occurred and that his medical records would reveal the correct date. Bates further contends that the Commission ignored the fact that in his deposition he had testified that he reported the accident to his supervisors, “Randy and Jeff.” Bates submits that DMG failed to present any evidence to contradict the existence of a supervisor named Jeff and that the accident was reported to him.
¶ 17. These are after-the-fact contentions that disregard the aforementioned standard of review adhered to in workers’ compensation cases and the well-settled law that governs them. The Act places with the claimant, not the employer or its insurance carrier, “the burden of proving by a ‘fair preponderance of the evidence’ that an injury occurred that has a causal connection with the claimant’s employment.” City of Laurel v. Blackledge, 755 So.2d 573, 577-78 (¶ 17) (Miss.Ct.App.2000) (citing Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 13 (Miss.1994)). That Bates could not recall the exact date(s) he allegedly injured his back, or remember the name(s) of the DMG supervisor(s)[3] he allegedly notified about his injury, presented factual questions for the Commission to contend with in its ultimate determination as to whether Bates adequately demonstrated that he had suffered a compensable injury as contemplated by the Act. Our task, like that of the circuit court in this case, is, as previously mentioned, limited to determining whether the evidence by which the Commission based its decision is sufficient. We find that it is.
¶ 18. Bates presented no corroborating witness(es) with respect to his alleged injury. Even though Bates claimed they existed in the case, no one testified that he or she contemporaneously observed Bates exhibit signs, or express complaints, of a disability. Again, Butler did not witness Bates injure himself; rather, he claimed that sometime in August 2005, Bates used a faulty pallet jack, which, in Butler’s opinion, could have resulted in an accident. As *860 DMG points out on appeal, a claimant must prove he or she suffered a work injury “beyond speculation and conjecture.” Coleman, 377 So.2d at 608. The Commission treated Butler’s testimony accordingly, and it had the prerogative to do so.
¶ 19. The Mississippi Supreme Court has spoken to instances where contemporaneous corroboration of a work injury is absent from the case and has expressed the following:
The claimant is competent to prove his own claim, and his testimony may be accepted without corroboration. It may be acted upon although disputed by other witnesses and if undisputed and not untrustworthy, must be taken as conclusive proof of the fact. On the other hand, if the claimant is uncorroborated as to the occurrence of a claimed accident and is shown to have made statements inconsistent with the claim, the [Cjommission is not bound to accept the testimony as the basis for an award.
Penrod Drilling Co. v. Etheridge, 487 So.2d 1330, 1333 (Miss.1986) (quoting Vardaman S. Dunn, Mississippi Workmen’s Compensation, § 264 (3d Ed.1982)).
¶ 20. Here, the Commission expressly found Bates’s testimony untrustworthy and rejected it. Based on the rules of law mentioned above and the facts of this case, we find that the Commission was justified in doing so.
¶ 21. Aside from the fact that Bates could not remember the date when his alleged injury occurred, or recall exactly who he had reported it to, Bates consistently maintained throughout the case that his first visit to the emergency room at King’s Daughters Medical Center coincided with his last day of work. In his deposition, Bates testified that immediately following the accident, he told his employer that he was experiencing “shooting pain.” Bates claimed his employer would not allow him to continue working and told him to go to King’s Daughters Medical Center to get it checked, which Bates said he did. According to Bates, this all occurred on the same date.
¶ 22. At the hearing, Bates’s version of events differed somewhat in that Bates claimed that the accident initially occurred the night before his last shift. Bates testified that he came in the next evening, tried to work, and then told a supervisor he was experiencing pain in his back. He then went to the emergency room at King’s Daughters Medical Center that day to have it checked out.
¶ 23. Bates’s medical records and employment records contradicted both accounts. According to the medical records, Bates’s first visit to the emergency room occurred on August 22. Bates’s employment records, however, disclosed that August 19 was the last date Bates actually worked at the warehouse. Bates made no attempt whatever at the hearing to explain this discrepancy.
¶ 24. Bates also had no explanation for the fact that his August 22 medical records indicated that the back pain he claimed he was then experiencing had been on going for a month prior. “When a patient gives a history to a physician which is inconsistent with allegations in a workers’ compensation case, this is a significant factor in support of denial of a claim.” Raytheon Aerospace Support Servs. v. Miller, 861 So.2d 330, 336 (¶ 16) (Miss.2003) (citing Hudson v. Keystone Seneca Wire Cloth Co., 482 So.2d 226, 227-28 (Miss.1986)).
¶ 25. The Commission’s conclusion that Bates failed in his burden of proof to demonstrate that he had sustained a compen-sable work-related injury is supported by *861 sufficient evidence. Bates’s arguments to the contrary are without merit.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON AND RUSSELL, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.

. According to the record, shuttle operators moved the loaded pallets from the loading dock to various places inside the warehouse after the unloaders had removed the pallets from the trailers.

. The record indicates that the cargo shipped to DMG’s warehouse sits atop pieces of cardboard, which is used to cover the pallet boards; it is the responsibility of the unload-ers to sheer any excess cardboard away from the pallet once it is taken off the trailer.

. In his petition to controvert. Bates listed "David, Supervisor” as the DMG employer who he had allegedly notified about his injury on August 26.