MAXWELL, J., for the Court:
¶1. Joseph Kittrell filed for workers’ compensation benefits after he claimed he hurt his back working as a pipefitter for W.S. Red Hancock. Hancock denied Kitt-rell suffered a work-related injury and contested the claim. After hearing testimony from Kittrell, his supervisors, and coworkers, the administrative judge (AJ) and Mississippi Workers’ Compensation Commission found Kittrell had not suffered a work-related injury and denied disability benefits. Our review shows the Commission’s decision is supported by substantial evidence, so we affirm.
Facts and Procedural History
¶ 2. On January 10, 2011, Kittrell began working for Hancock as a pipefitter in Laurel, Mississippi. He claimed that around March 10, 2011, he jarred his back when a coworker dropped a 300 pound pipe they were carrying. Kittrell did not immediately seek medical treatment. Though he says he reported the injury to Hancock that day, his supervisors at Hancock disputed this. . The record shows Kittrell returned to work the next day. And he worked three more days as a pipefitter before calling Hancock on March 18 and 19, to tell them he had a doctor’s appointment.
¶ 3. On March 19, 2011, Kittrell visited the Greene County Hospital complaining of back pain. He reported he was injured nine days earlier when his “partner dropped his end of [a six-inch] pipe.” Kitt-rell said he was holding the other end of the pipe and was “jerked downward.” He was diagnosed with a back sprain and Grade 1 Spondylolisthesis of L5 on SI and was referred to an orthopedic surgeon.
¶ 4. Hospital records show Kittrell was born with a birth defect in his back. He had also suffered a previous back injury in 1992 from a work-related fall. In 1993, he injured his back again, this time working as a pipefitter for Brown & Root Construction Company. He received a workers’ compensation settlement for this injury. The records also show that on July 31, 2007, Kittrell was diagnosed with “Grade 1 anterolisthesis of L5 on SI probably secondary to bilateral pars and/or articularis defects at L5.” There was also a finding of “mild disc space narrowing at L4-L5 *859 compatible with degenerative disc disease.” And in the 2007 medical records, Kittrell reported a history of chronic back pain.
¶ 5. On March 20, 21, and 22, Kittrell was marked absent from work. Because Hancock had a three-day no-call, no-show policy, Kittrell was terminated on March 23. While Kittrell insists the company told him he need not keep calling in to work because he had not been medically released to return to work, the company denied he had contacted them.
¶ 6. On March 21, 2011, Kittrell went to Greene County Family Medical Clinic where Nurse Practitioner Jason Box treated him. Insurance records from the medical clinic show Kittrell was paying out-of-pocket for a non-work-related condition. There was no indication he asked Hancock to send him to a doctor or pay his medical bills.
¶ 7. On April 1, 2011 — after Hancock had already terminated Kittrell — Nurse Box wrote a letter to Hancock, noting he had seen Kittrell on March 21, 2011, and March 28, 2011, for “an injury sustained at work” and had recommended an MRI of Kittrell’s lumbar spine. This letter was written at Kittrell’s request. Kittrell mailed the letter to Hancock’s main office in Bentonia, Mississippi — not the Laurel office where he worked. On April 25, 2011, Hancock’s attorney responded to Box’s letter, informing Box that Hancock was “not presently aware of any work-related injury involving [Kittrell].”
¶ 8. On May 10, 2011, Kittrell filed a petition to controvert with the Commission. He claimed he “was installing a metal pipe [for Hancock] when he strained his lower back.” While Kittrell listed March 10, 2011, as the date of injury, he later testified he was unsure of the exact date. Kittrell maintained he notified his supervisor, Jerry Platt, about the accident. But Hancock denied Kittrell gave the company any notice of an injury. It also denied that Kittrell injured himself at Hancock.
¶ 9. On November 1, 2011, the AJ held a hearing on the compensability of Kitt-rell’s claim. Several witnesses testified live and around 30 exhibits were introduced, including deposition testimony from some non-present witnesses. On June 15, 2012, the AJ entered an order denying benefits. The AJ found Kittrell did not suffer a work-connected injury. On May 20, 2013, the Commission adopted the AJ’s order and denied Kittrell disability benefits.
¶ 10. Kittrell now appeals.
Testimony
A. Claimant’s Witnesses
1. Joseph Kittrell — Claimant
¶ 11. Kittrell could not remember the exact date he hurt his back. While he thought it was March 10, 2011, he was unsure. But Kittrell did remember attending Hancock’s daily morning safety meeting at 6 a.m. the morning he was injured. Employees were told at that meeting if they sustained an injury to report it. After the meeting, Kittrell recalled his supervisor, John Murray, instructing he and his coworker, Nick Williams, to move a pipe[1] so a welder would have room to work on it. No lifts or cranes were available to move the pipe, so Kittrell picked up one end and Williams picked up the other. The pipe slipped from Williams’s hands. And when it dropped, it “snatched” Kittrell over, jerk *860 ing his back. Kittrell testified he “drew up like a pretzel.”
¶ 12. According to Kittrell, this injury occurred at 7 a.m., and he notified Murray of his back injury just minutes later. Kitt-rell testified that Murray told him to “take it easy” but to finish his work. Later that day, Kittrell claimed he also told Jerry Platt (general plant manager), Anthony Hudson (shop superintendent), and Greg Carr (safety director) about his injury. Yet all of these individuals deny Kittrell informed them he had been injured. But Kittrell claims each told him to keep working but to “take it easy.” Kittrell admitted he never filled out an accident report, even though it was protocol to do so when someone was injured at Hancock.
¶ 18. Kittrell claimed that the next day, presumably Friday, March 11, 2011, his back was hurting, so he sat on a bucket while working. At some point that day, Kittrell maintains Platt told him to take off the weekend to rest.
¶ 14. Kittrell fell at a work site in 1992, injuring his back. He also admitted he hurt his back in 1993 when working for Brown & Root. And he had recovered a workers’ compensation settlement for that injury. Kittrell testified he had no back problems since 1993 — though his medical records showed otherwise. When asked if he had previously injured his back while working for Performance Construction, Kittrell denied ever working there. But Kittrell had listed his stepson, Austin Williams, as a reference on his job application to Hancock. On the application, he claimed his relationship to Austin was “coworker” at the company “Performance.”
2.Nick Williams — Kittrell’s Former Coworker
¶ 15. Two of Kittrell’s coworkers testified on his behalf. Both had left employment with Hancock before Kittrell filed his workers’ compensation claim. Nick Williams worked with Kittrell as a pipefit-ter at Hancock. Williams explained in his deposition that Kittrell was injured around 10 a.m. on March 10, 2011. The. injury happened when the two were working on a six-inch, 300 pound, carbon-steel pipe together. When they tried to move the pipe, it slipped from under Williams’s right arm and hit the jack stand. Williams turned around and saw Kittrell leaning over. Kittrell said he hurt his back. Of the approximately fifty other people present, no one else saw the incident.
¶ 16. Williams testified that Kittrell reported his back injury to Murray. And he heard Murray tell Kittrell to let Hudson and Platt know. But Williams had no idea if Kittrell ever did. The next day, Williams recalled Kittrell sitting on a bucket at work because his back was still hurting. Kittrell could hardly walk.
¶ 17. Williams admitted he left his employment with Hancock on bad terms. He apparently got into a swearing match with Platt and either quit or was terminated.
3.David Fleming — Kittrell’s Ride to Work
¶ 18. David Fleming and Kittrell carpooled to Hancock every day. Fleming was a pipe welder at Hancock, but did not work with Kittrell. When Fleming picked Kittrell up on March 10, 2011, at 4:45 a.m., Kittrell did not appear to have any back problems. But later that day at around 3 p.m., Kittrell told Fleming he hurt his back moving a pipe and had a shooting pain down his side. Fleming said Kittrell appeared to be “hobbling real bad.”
¶ 19. Fleming, like Williams, had also been terminated by Hancock. Fleming was fired on March 19, 2011, for insubordination.
4.Juanita Kittrell — Kittrell’s Wife
¶ 20. Juanita testified that when Kitt-rell came home on March 10, 2011, he was *861 “walking weird” and was “bent over to one side.” Kittrell told her he hurt his back moving a pipe.
B. Hancock’s Supervisory Employees
1.John Murray — Hancock’s Shop Foreman and Kittrell’s Supervisor
¶21. John Murray[2] remembered Kitt-rell being “humped over” prior to the 6 a.m. safety meeting on March 10, 2011. When Murray asked Kittrell what was wrong, Kittrell told him his back flared up from an old injury at Performance Construction. Murray told Kittrell to report his injury to Hudson. But Kittrell insisted he was okay and kept working. Kittrell never told Murray he hurt his back working at Hancock.
2.Anthony Hudson — Hancock’s Shop Superintendent
¶ 22. Anthony Hudson[3] was the contact person for employees who were going to be late, absent, or sick. He testified that every morning at 6 a.m., he held a safety meeting. All employees were required to attend and sign the minutes of the safety meeting. The minutes memorialized what was covered at the meeting. Each day, the employees were advised to report any injuries to their supervisor or safety director. The minutes for the March 10, 2011 safety meeting, which contained Kitt-rell’s signature, specifically noted — employees were instructed to “report all injuries.”
¶28. Hudson explained that each employee was assigned a specific task after the morning meeting. These assignments were documented on the “John Murray Lists.” The purpose of these lists was to track the hours worked on each project. On March 10, 2011, the John Murray Lists showed Kittrell worked on two twelve-inch pipes for five hours each.[4] Records show Kittrell never worked on a six-inch pipe that day. And Hudson testified that Kitt-rell never reported a Hancock-related injury to him. In fact, he only learned of the alleged Hancock injury when the petition to controvert was filed.
¶ 24. Hudson did recall seeing Kittrell hunched over on one occasion. Kittrell told him his back was hurting from an old injury at a previous job. Hudson did not specify the date of this conversation.
3.Gregory Carr — Hancock’s Safety Director
¶ 25. Gregory Carr[5] confirmed employees were required to attend a 6 a.m. safety meeting every morning. Employees were instructed to report any injuries, wear safety gear, watch out for tripping haz-zards, and use forklifts or cranes to move items weighing more than fifty pounds. If an injury was reported, an incident report would be filled out. Kittrell never reported an injury to him. Nor was there an accident report showing he had been hurt. Like Hudson, Carr did not learn of the alleged injury until after Kittrell filed a workers’ compensation claim. And the first time he saw the April 1, 2011 letter *862 from Nurse Box, claiming Kittrell injured himself working, was at his October 18, 2011 deposition.
4. Elaine Eisner — Hancock’s Office Manager
¶26. Elaine Eisner[6] testified Kittrell never reported any injury to her. Even after Kittrell was terminated and picked up his final paycheck, he did not mention being hurt. She too first learned of the alleged injury when Kittrell filed for workers’ compensation benefits. Eisner explained Kittrell was fired from Hancock on March 28, 2011, for violating the company’s three-day no-call and no-show policy. She did not see the April 1, 2011 letter from Nurse Box claiming Kittrell had been injured at Hancock until her deposition.
Discussion
¶ 27. Appellate review of workers’ compensation claims is limited. Daniels v. Peco Foods of Miss., Inc., 980 So.2d 360, 363 (¶ 8) (Miss.Ct.App.2008). The Commission is the ultimate fact-finder and may accept or reject an AJ’s findings. Hardin’s Bakeries v. Harrell, 566 So.2d 1261, 1264 (Miss.1990). If the Commission’s factual findings are supported by substantial evidence, we may not disturb them. Id. (citing R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1021 (Miss.1990)). Substantial evidence is “such rele vant evidence as reasonable minds might accept as adequate to support a conclusion.” Imperial Palace of Miss., LLC v. Ryan, 113 So.3d 630, 632 (¶ 10) (Miss.Ct.App.2013) (quoting Kukor v. Ne. Tree Serv., Inc., 77 So.3d 1134, 1136 (¶ 7) (Miss.Ct.App.2011)).
The Commission’s Decision
¶28. The Commission found Kittrell failed to prove a work-related injury. As the Commission saw it, there was “simply no believable reason” Kittrell would not have made a timely, definitive report about the injury to Hancock “if he actually had been injured as he described at the emergency room and at the hearing.” Weighing heavily in its denial of benefits was its belief that Hancock’s supervisory employees were more credible than Kittrell and his terminated coworkers. The Commission was also quite suspect of discrepancies in what Kittrell said and did after the supposed injury. After review, we find substantial evidence supports the Commission’s decision.

Kittrell’s Burden

¶ 29. For a claimant to recover in a workers’ compensation case, he must prove, by a preponderance of the evidence: “(1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the death or claimed disability.” F & F Const. v. Holloway, 981 So.2d 329, 332 (¶ 11) (Miss.Ct.App.2008) (quoting Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 13 (Miss.1994)). The claimant’s proof of a work-injury must be “beyond speculation and conjecture.” Bates v. Dedicated Mgmt. Grp., LLC, 67 So.3d 855, 860 (¶ 18) (Miss.Ct.App.2011).
¶ 30. As decision-making goes, the fact-finder in a workers’ compensation case is the Commission — not the appellate court. The Commission is also tasked with deciding if the claimant has met his burden. Martinez v. Swift Transp., 962 So.2d 746, 751 (¶24) (Miss.Ct.App.2007). And in sifting conflicting evidence, it is the Commission that makes all credibility determinations. Id. On appeal, we must give “substantial deference” to these credibility calls. Id.
*863 ¶ Bl. Here, the Commission spotted what it believed were a number of red flags with Kittrell’s story. Some were small discrepancies, others much larger. For example, Kittrell told his supervisor, Murray, his back had flared up from an old back injury he sustained at Performance Construction. But when Kittrell was later asked about working at Performance Construction, he denied ever working there. Yet his job application to Hancock listed his stepson as a reference from their time as coworkers at Performance Construction.
¶ 32. And though Kittrell had a documented history of back problems, he was less than candid about them. Medical records showed Kittrell was bom with a back defect. Records also showed Kittrell injured his back in 1992 in a work-related fall — an injury he did not disclose. And in 1995, Kittrell settled a workers’ compensation claim for a back injury that occurred in 1993 when he was working at Brown & Root. While he testified he had not had any back problems since 1993, medical records showed Kittrell sought treatment for back pain in 2007. When seeking treatment in 2007, he reported a history of-chronic back pain.
¶ 33. The Commission also found it somewhat unusual in this case that Kittrell could not remember the date and time the injury occurred. There were also some questions about the type of pipe he was moving. Kittrell and Williams claimed they were moving a six-inch pipe. But Hudson testified, and the “John Murray Lists” showed, they were working on a twelve-inch pipe. Also, Kittrell did not fill out an injury report with Hancock. Nor did he ask Hancock to pay for medical treatment. The Commission also pointed out that insurance-claims forms from the Greene County Family Medical Clinic showed the injury was not work related.
¶ 34. While this is so, Kittrell argues that Williams, Fleming, and Juanita all corroborated the occurrence of a work-connected injury. But Williams and Fleming had been recently fired or left the company. And only one of these three was with Kittrell during the alleged accident. The Commission was also suspicious that none of the other people in the room saw Kittrell get injured or drop the 300 pound pipe.
¶ 35. Although Kittrell claimed he notified Platt, Hudson, and Carr of his injury, all of these supervisory Hancock employees denied he did. The office manager, Eisner, also testified that Kittrell did not tell her of a work-related injury — even when he picked up his last check after he was terminated for not showing up at work. There was some mention that Kitt-rell complained of a flare up from a previous back injury, but Murray and Hudson testified Kittrell never said the injury was related to his work at Hancock.
¶ 36. These Hancock employees all claim the first they learned of an alleged work-related injury at Hancock was when they received a copy of the petition to controvert — more than thirty days after the supposed injury. And as mentioned, the Commission found Platt, Hudson, Carr, Eisner, and Murray more credible than Kittrell and his coworkers. The Commission felt the supervisory Hancock employees were “ordinary hard-working individuals” who had no axe to grind against Kittrell or reason to lie about their lack of knowledge of an injury. None of them had an ownership interest in the company. Nor was there any apparent incentive for them not to file a workers’ compensation report had the injury been reported. And the Commission did not believe they had plotted against Kittrell or were untruthful.
*864 ¶ 37. Again, with conflicting evidence, it is the Commission that judges the credibility of witnesses and “has the authority to accept or reject testimony depending on the circumstances which demonstrates the degree of trustworthiness or credibility accompanying the testimony at issue.” Waffle House, Inc. v. Allam, 976 So.2d 919, 922 (¶ 10) (Miss.Ct.App.2007). And here, the Commission simply found the testimony of the Hancock representatives more believable than Kittrell’s story. After review, we find substantial evidence supports the Commission’s credibility determinations and decision that Kittrell failed in his burden of proving a compensable claim. We thus affirm.
¶ 38. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND FAIR, JJ„ CONCUR. JAMES, J., DISSENTS WITH SEPARATE WRITTEN OPINION.

. Kittrell claimed the pipe was six inches, although other evidence confirmed he had only worked on a twelve-inch pipe that day.

. Murray gave a recorded statement on October 25, 2011. He was also deposed on October 27, 2011, but he did not testify at the hearing.

. Hudson was deposed and testified live at the hearing for Hancock.

. Kittrell claimed he was working on a six-inch pipe when he hurt his back on or about March 10, 2011. The John Murray Lists refute this. The Lists also showed that Kittrell worked on one twelve-inch pipe on March 8, 2011, and two ten-inch pipes for five hours each on March 9, 2011. So even on the days before the alleged injury, records show Kitt-rell was not working on a six-inch pipe.

.Carr, was deposed and testified live at the hearing.

. Eisner was deposed and testified live at the hearing for Hancock.